Argued and submitted July 8, 1985, affirmed April 30, 1986

# BANK OF MYRTLE POINT,
*Respondent,*

*v.*

# SECURITY BANK OF COOS COUNTY et al,
*Appellants.*

## (83-26; CA A33866)

718 P2d 1373

Martin E. Stone, Coquille, argued the cause for appellants. With him on the briefs was Slack, Stone and Gillespie, Coquille.

Maurice V. Engelgau, Coquille, argued the cause for respondent. With him on the brief was Bruce E. Wiegman, Coquille.

Before, Richardson, Presiding Judge, and Warden and Newman, Judges.

NEWMAN, J.

## NEWMAN, J.

This case is before us a second time. Plaintiff brought an action to recover money resulting from the foreclosure of a trust deed by "advertisement and sale." ORS 86.735; ORS 86.770. It holds two mortgages that are subordinate to a trust deed of which defendant Security Bank of Coos County ("Security Bank") is the beneficiary and defendant Stone is the trustee. The principal issue is whether, as the trial court held, defendants are liable to plaintiff for a portion of Security Bank's bid at the trustee's sale. The court granted plaintiff's motion for summary judgment. We affirm.

In *Bank of Myrtle Point v. Security Bank of Coos Co.*, 67 Or App 512, 678 P2d 772, *rev den* 297 Or 339 (1984) (*"Bank of Myrtle Point I"*), we held that the trial court erred in granting defendants' motion for summary judgment, and we reversed and remanded. We stated the facts then in the record:

"In 1977, Mr. & Mrs. McCollom (grantors) executed a trust deed with Security Bank as beneficiary to secure a promissory note in the sum of $12,000. Thereafter, the grantors executed and delivered to plaintiff two mortgages on the same land described in the trust deed. The mortgages are subordinate only to the trust deed. Security Bank had other outstanding loans to the grantors.

"In 1980, Security Bank consolidated the original loan of $12,000 with the other loans into one promissory note. The grantors defaulted on the consolidated loan, and Security Bank elected to foreclose the trust deed, asserting that the trust deed secured the consolidated loan. The trustee's notice of default and election to sell and the published notice of sale recite that the trust deed secures a debt of $39,279. Plaintiff advised Stone [the trustee under the McCollom trust deed and counsel for Security Bank] that the trust deed gave Security Bank only priority to the extent of the principal sum of $12,000, plus interest and foreclosure expenses. Stone proceeded with the foreclosure, which culminated in a trustee's sale of the property to Security Bank on September 29, 1982. Plaintiff's attorney attended the sale but did not bid. No bids being made, Stone stated that he was authorized by Security Bank to bid $51,783, and he accepted that bid. On October 14, 1982, Stone delivered his trust deed to Security Bank, and it was recorded.

"Plaintiff then made written demand on defendants for

the amount by which the bid exceeded the sum [which was] secured by the trust deed [and prior to plaintiff's mortgages]. After that demand, defendants elected to readvertise and resell the land. In order to accomplish that, Security Bank conveyed the land back to Stone by its 'deed of reconveyance,' and Stone again initiated foreclosure proceedings. This time, the notice of default and election to sell recited that the debt secured is $12,000 plus interest and expenses. This action followed." (Footnote omitted.)

Plaintiff filed its motion for summary judgment with supporting affidavits just before the first trial, but the trial court had not yet considered them at the time when it granted defendants a summary judgment. Moreover, in *Bank of Myrtle Point I*, plaintiff did not assign as error the court's failure to grant its motion for summary judgment, but only that the court erred in granting defendants a summary judgment. Nonetheless, in *Bank of Myrtle Point I*, we stated in a note that "[o]n remand, if plaintiff renews its motion for summary judgment, it should be granted." 67 Or App at 516 n 2.

On remand, plaintiff renewed its motion for summary judgment. Defendants answered, asserting affirmative defenses and a setoff, and submitted supporting affidavits. The trial court considered plaintiff's motion and the record before it and stated:

"The Answer with Affirmative Defenses filed September 7, 1984, and the affidavits in opposition to plaintiff's Motion for Summary Judgment filed July 2, 1984, create genuine issues of material facts; however, the Trial Court is bound by the footnote directive of the Court of Appeals in Bank of Myrtle Point v. Security Bank of Coos County, 67 Or App 512 at 516 (1984)

" '2. On remand, if plaintiff renews its motion for summary judgment, it should be granted'.

"The Trial Court understands that the issue of plaintiff's motion for Summary Judgment had not previously been ruled upon nor was it argued on appeal. Plaintiff's Motion for Summary Judgment will be allowed."

The court granted plaintiff a summary judgment for $27,279.82 with interest. Defendants assign as errors that the court 1) allowed the motion for summary judgment and 2) entered judgment in that amount and did not give defendants

a hearing on the question of the amount of plaintiff's damages before it entered that judgment.

We affirm, but for different reasons than those that the trial court gave. Defendants argue that the footnote should not decide this case. We agree. On reexamination, we recognize that our footnote in *Bank of Myrtle Point I* was wrong. The trial court had not ruled on plaintiff's motion for summary judgment, and plaintiff had not assigned as error that the court had not granted it. It was not before us in *Bank of Myrtle Point I*. We will not decide this case on the basis of the footnote.

Nonetheless, the trial court did not err when it granted plaintiff a summary judgment, because there were then no genuine issues of material fact and plaintiff was entitled to summary judgment as a matter of law. ORCP 47. The record then included defendants' answer and affidavits in opposition. Defendants' answer affirmatively alleged that 1) "defendants' belief with respect to the priority of the October 3, 1977 Trust Deed and the May 21, 1980 promissory note was mistaken" and Security Bank's bid at the foreclosure sale and the trustee's acceptance of it "was a result of mistake"; 2) plaintiff was "estopped" from challenging the correctness and validity of the September 29, 1982, foreclosure sale, because it was present at the sale, had an opportunity to bid for the property and did not do so and also knew that Security Bank did not intend to make a cash payment but only an offset bid against the grantor's debt; and 3) Stone, as trustee, had reconveyed the property to Security Bank and then resold it at a second foreclosure sale for $10,000. By way of setoff defendants alleged that the market value of the property on September 29, 1982, was between $23,000 and $25,000. Defendants' affidavits supported the allegations of their answer.

Defendant argues that the record before the trial court on plaintiff's motion for summary judgment raises several genuine fact issues:

"1. whether the trustee and beneficiary were mistaken as to the amount of the secured debt; 2. whether the mistaken belief gives rise to the relief of readvertisement and resale of the subject property; 3. whether plaintiff is entitled to damages when it was aware of the consolidation of the debts in May of 1980; and 4. whether plaintiff is entitled to damages considering the fact that plaintiff was given the opportunity to bid at the first sale, but offered no bid."

Only the first of those, however, raises a fact question; the latter three raise purely legal questions. Moreover, assuming that the assertions in defendants' affidavits are true and they were both mistaken as to the priority of Security Bank's entire secured claim against the property, plaintiff nonetheless is entitled to summary judgment.

■     Defendants do not dispute the factual assertions in plaintiff's affidavit that Security Bank authorized Stone to bid $51,783 in its behalf, that Stone made the bid and that, as trustee, he accepted it.[1] Security Bank's bid and its acceptance

---

[1] Plaintiff submitted the affidavit, which defendants do not contradict, of Wiegman, one of its attorneys, which attached and incorporated correspondence between him and Stone:

"That at some time prior to June 15, 1982, I was retained by said bank to represent it respecting a trust deed foreclosure proceeding initiated by the Security Bank of Coos County regarding a particular piece of real property then owned by JOHN and BRENDA McCOLLUM.

"The Security Bank of Coos County (herein after 'Security Bank'), through its counsel, Martin E. Stone, had begun a trust deed foreclosure by advertisement and sale on said real property. Security Bank had two loans secured by this property and the foreclosure included both.

"A brief review of this matter indicated that Security Bank had one secured loan, which it was foreclosing, prior to the interest of the Bank of Myrtle Point. This loan was in an original amount of $12,000.00. However, the second and larger secured loan was subsequent to the interest of the Bank of Myrtle Point.

"This information was communicated to Mr. Stone as attorney for Security Bank by telephone.

"On June 15, 1982, I wrote and had mailed, a letter to Mr. Stone asking for his authority for claiming that both of Security Bank's loans had priority over the interest of the Bank of Myrtle Point. A copy of said letter is attached hereto marked attachment 'A' and made a part hereof.

"Thereafter followed a number of telephone conversations and limited correspondence between Mr. Stone on behalf of Security Bank and myself. A copy of the letter of mine and a copy of one from Mr. Stone are attached hereto marked Attachments 'B' & 'C' and made a part hereof.

"These letters and, more importantly, the telephone conversations between Mr. Stone and myself gave notice to Mr. Stone and Security Bank, that the Bank of Myrtle Point claimed an interest secondary only to Security Bank's first and smaller secured loan. The Bank of Myrtle Point never changed from its position that its secured loan was prior to Security Bank's second secured loan, with respect to the subject property.

"In one of the last telephone conversations that I had with Mr. Stone prior to the Trustee's sale, I informed him that the Bank of Myrtle Point would file suit with regard to its claim. I was told that Mr. Stone would accept service of Summons and was, at the same time, asked to initiate this suit prior to the sale.

"On September 29, 1982, at the time and place stated in the Notice of Sale,

by Stone constituted a sale of the property, ORS 86.755, which terminated plaintiff's interest in it. ORS 86.770(1). The sale was "for cash" within the meaning of ORS 86.755(1), which Security Bank, as purchaser, was obligated to pay at the time of the sale, ORS 87.755(4); *Bank of Myrtle Point I, supra,* 67 Or App at 516, and plaintiff was entitled to the excess of the bid over Security Bank's prior secured interest and the costs of sale. ORS 86.765(3).

Citing *Olmsted v. Melville,* 93 Colo 567, 27 P2d 589 (1933), in which the defendant and the beneficiaries had made a clerical mistake in computing the amount of the bid, defendants argue that their shared mistake as to the amount of Security Bank's prior secured interest allowed the trustee to void the sale and readvertise and resell the property. We do not find defendants' authority persuasive. *Olmsted* does not adequately consider the statutory interests of persons other than the bidder, including junior lienholders and the grantors whose interests in the property are cut off by a sale. ORS 87.770. Furthermore, both for trustee's and sheriff's sales under trust deeds and mortgages, *see* ORS 86.715, a bidder is bound by a bid at the sale in the absence of fraud or misrepresentation.

> "A mistake on the part of the mortgagee or his attorney in bidding more than he intended will not itself justify an application or action by the mortgagee to set aside the sale." 2 Wiltsie, *On Mortgage Foreclosure* 1452, § 904 (5th Ed 1939).

> "The making of such a bid at a non-judicial foreclosure sale 'finally fixes the value of the property therein sold' and clearly obligates the trustee who conducts the sale to account * * * for the excess." *Aneill Ranch v. Petit,* 64 Cal App 3d 277, 294, 134 Cal Rptr 456 (1976). (Citations omitted.)

*See also* Osborne, *Mortgages* 740, § 344 (2d Ed 1970); 2 Wiltsie,

Mr. Stone conducted the sale. Where no bids were made, Mr. Stone stated that he had written authorization from Security Bank to bid $51,783.22. Mr. Stone accepted that bid and closed the sale of proceedings. At no time during the sale was Security Bank's bid referred to as an 'off set bid' nor was it a conditioned or contingent bid. One bid amount was given and accepted. Neither at this time nor at any other time during which I handled this matter was this bid claimed, by the Bank of Myrtle Point, to have been improper.

"After the sale was completed, I reminded Mr. Stone of the Bank of Myrtle Point's claim and asked for a break down of Security Bank's bid. He sent me a letter, dated September 29, 1982, which is attached hereto * * *." (See n 4, *infra.*)

*supra,* at 1432, § 891. None of the parties has raised issues of fraud or misrepresentation. Regardless of a mistake in the amount of its bid, Security Bank is bound by it.

■ Stone was not entitled under these circumstances to set aside the sale and readvertise and resell the property.

> "It is well settled that the trustee in a deed of trust owes duties both to the mortgagor and the holder of the debt. Hence he must act with strict impartiality." Kratovil and Werner, *Modern Mortgage Law and Practice* 45, § 3.03(c)(1) (2d Ed 1981).

Stone was under an obligation as trustee to perform statutory duties in his conduct of the sale and application of its proceeds, *see* Nelson and Whitman, *Real Estate Finance Law* 549, § 7.21 (2d Ed 1985), not only to the beneficiary, but also to those with recorded subsequent liens and to the grantors. ORS 86.765. Even assuming that, with the consent of plaintiff and the grantor, he could have released Security Bank from its bid and readvertised and resold the property, he lacked that consent. He had no authority to readvertise and resell.[2]

■ Moreover, plaintiff is not estopped from recovery because it knew that defendants had sought consolidation of debts or because plaintiff had an opportunity to bid at the sale but did not do so. Neither plaintiff's failure to bid nor its knowledge of defendants' mistake as to priority affects its interest in the proceeds of sale.[3] ORS 86.765. Plaintiff is entitled, to the extent of its secured interest, to the amount that Security Bank's bid at the first sale exceeded its prior secured interest and the costs of sale.

■ In their second assignment, defendants assert that, even if plaintiff is entitled to the excess of Security Bank's bid at the sale, the court improperly calculated the amount of that excess. They argue that (1) the market value ($23,000 to $25,000) and not the bid amount is the sum from which Security Bank's secured debt and costs should be subtracted to determine the excess and (2), even if the bid amount is controlling, the excess is not $27,279.82 but only $23,588.14.

---

[2] Although there is no statutory basis for a trustee's readvertisement and resale of property, we do not now say that such action by a trustee would never be appropriate.

[3] Although not material to our disposition, we note that plaintiff, by telephone and letter, informed defendants of their mistake *before* the sale.

Defendants base the latter argument on the assertions that, notwithstanding their mistake as to the priority of Security Bank's interests, its bid of $51,783.22 was incorrectly computed and should have been $47,793.22,[4] and that the amount of the secured debt, with interest, attorney and trustee fees and the costs of sale total $24,175.08. The arguments are without merit. The amount of the accepted bid, not the market value or intended bid, establishes the ceiling on the "proceeds of sale" to be distributed under ORS 86.765. Defendants do not dispute plaintiff's assertion that Stone, on behalf of Security Bank, bid and that he, as trustee, accepted the single sum of $51,783.22.[5] Defendants cannot argue now that Security Bank's bid was less. Accordingly, if we accept defendants' position that the secured amount is $24,175.08, the resulting difference of $27,608.14 is more than the judgment that the court granted. There was, therefore, no genuine issue of material fact about the amount of plaintiffs' judgment about which defendants can complain. The court did not err in setting the amount of plaintiff's judgment and in not holding a further hearing on the amount of the damages.

Affirmed.

---

[4] In a letter from Stone to Weigman on September 29, 1982, Stone states:

"I have set forth below an accounting of the amounts owed to Security Bank as of the date of the foreclosure sale held in Coquille, Oregon:

| | |
|---|---:|
| "Principle and interest owed by McCollums to Security Bank of Coos County as of date of sale:<br>Principal ($39,279.82)<br>Interest ($2,291.88) | $41,571.70 |
| Trustee's Fee: | 688.58 |
| Attorney's Fee: | 5,000.00 |
| Publication Expenses: | 249.40 |
| Service fees/recording costs/ certified letters | 283.54 |
| Total: | $51,783.22 |

"The Bank's bid is premised on the fact that McCollums owed to the Bank the above debt as of the date of sale on the promissory obligation. The Bank's bid was and is intended to be equivalent to the debt owed by McCollums and therefore no money will be paid to the trustee for distribution to any other creditors."

Stone's figures in fact total only $47,793.22.

[5] Our opinion in *Bank of Myrtle Point I* states that Security Bank's bid was $51,783.22.