UNITED STATES of America,
Plaintiff–Appellee,

v.

GENERAL MOTORS CORPORATION,
Defendant–Appellant.

No. 89–1423.

United States Court of Appeals,
Sixth Circuit.

Argued Dec. 6, 1990.

Decided April 1, 1991.

Robert L. Baker, Buck & Baker, Nashville, Tenn., Geneva S. Halliday, Asst. U.S. Atty., Office of U.S. Atty., Detroit, Mich., Gary R. Allen, Acting Chief, David E. Brunori, William S. Estabrook, Brian C. Griffin (argued), U.S. Dept. of Justice, Appellate Section, Tax Div., Washington, D.C., for plaintiff-appellee.

Daniel M. Share (argued), Barris, Sott, Denn & Driker, Victor S. Valenti, Detroit, Mich., for defendant-appellant.

Before RYAN and NORRIS, Circuit Judges, and ALLEN, Senior District Judge.*

RYAN, Circuit Judge.

The government filed this action against General Motors Corporation ("GM"), pursuant to 26 U.S.C. § 6332(c), alleging that GM failed to honor an Internal Revenue Service ("IRS") levy upon property in its possession that belonged to another taxpayer and was encumbered by federal tax liens. The district court entered summary judgment for the government. We are asked to decide whether, as the district court held, GM is liable under I.R.C. § 6332(d)(1) for failing

* The Honorable Charles M. Allen, Senior District Judge of the United States District Court for the Western District of Kentucky, sitting by designation.

to honor the levy. We conclude that it is not.

Specifically, we hold that the district court erred in granting the government's motion for summary judgment because GM was not, at the time it received notice of the levy, in possession of property subject to the levy. We shall, therefore, set aside the summary judgment and direct that judgment be entered for GM.

## I.

In 1975, Oakwood Engineering and Experimental, Inc. ("Oakwood") and GM entered into a design agreement under which Oakwood was to perform certain engineering and related services for GM. GM agreed to pay for the services upon the terms and conditions set forth in the design agreement. The contractual relationship continued for a number of years. In February 1980, Oakwood negotiated a bank loan from NBD Troy Bank, N.A. for $75,000 and gave as security an assignment to the Bank of its "present and future" account receivables. On July 28, 1981, GM sent purchase order No. GEN 33534 to Oakwood calling for certain design services. Oakwood performed the requested services and between January 25 and February 2, 1982, submitted six invoices to GM in the total amount of $53,876.76.

On February 19, 1982, GM was notified by NBD Troy Bank, N.A. that Oakwood had assigned all its account receivables to the Bank and that, as a result, any money GM owed to Oakwood should be paid to the Bank.

However, on February 24, and again on March 2, 1982, the IRS served notices of levy upon GM directing GM to pay the IRS all property or rights to property in GM's possession which belonged to Oakwood, up to $87,175.02, Oakwood's outstanding federal tax liability.

On February 26, 1982, GM, in response to the Bank's February 19th notice, paid $53,876.76 to NBD Troy Bank, N.A., the amount owed to Oakwood for work performed under purchase order No. GEN 33534.

Because GM made no payments to the government pursuant to either of the levy notices, the IRS filed this action in the United States District Court for the Eastern District of Michigan to recover $53,876.76. The suit was brought pursuant to I.R.C. § 6332(c), on the theory that GM was obligated to honor the levy upon property in its possession which was encumbered by federal tax liens. The government claims, as it did below, that GM was in possession of funds it owed to Oakwood and refused to surrender the property to the IRS after notice of levy and final demand for payment.

GM claims that under Michigan law, by assigning its account receivables to the Bank in 1980, Oakwood transferred its entire interest in the accounts to the Bank and contends that under M.C.L. § 440.9318(3), when GM received notice of the assignment from the Bank, Oakwood had no property interests whatever in the funds, and GM could no longer pay the account receivables over to Oakwood. Thus, GM argues, when it received the notice of levy, it was not in possession of any property or rights to property subject to levy. GM contends that the Bank had a superior interest to that of the government in the account receivables, and that the government did not have a lien on the account receivables at all.

The government and GM filed cross motions for summary judgment in the district court. The court found for the government, stating:

> it is clear that under the Design Agreement and purchase order GEN 33534, Oakwood had a contractual property interest in the Funds for work performed. The fact that the Funds may have been subject to the Bank's lien, does not change the fact that Oakwood had a property interest in the funds.

The district court also found that GM's argument that the Bank had a superior security interest in the funds was without merit. The court held that "[l]ien priority is not a defense to an action to enforce a levy." The district court found that the "appropriate remedy for a person claiming

a superior interest in the property is to bring an action for wrongful levy."

## II.

### A. Levy Theory

The dispositive issue in this case is whether, at the time the IRS levy was received, GM was the custodian of the property or a property interest to which the tax lien could attach.

Under 26 U.S.C. § 6321, a lien arises when a taxpayer fails or refuses to pay his taxes after assessment, notice and demand. *See* I.R.C. §§ 6321 and 6322 (1982). "This lien arises upon assessment and attaches to 'all property and rights to property, whether real or personal, belonging to [the taxpayer]' including property which the taxpayer subsequently acquires." *United States v. Safeco Ins. Co. of Am., Inc.*, 870 F.2d 338, 340 (6th Cir.1989) (quoting 26 U.S.C. § 6321). Section 6321 is construed broadly because the language of the statute "reveals on its face that Congress meant to reach every interest in property that a taxpayer might have." *United States v. National Bank of Commerce*, 472 U.S. 713, 720, 105 S.Ct. 2919, 2924, 86 L.Ed.2d 565 (1985).

If the tax remains unpaid, within ten days after notice and demand, the IRS may collect the tax by levy. 26 U.S.C. § 6331. When a taxpayer's property is held by another, the IRS customarily serves a notice of levy upon that party, pursuant to 26 U.S.C. § 6332(a). This notice of levy "gives the IRS the right to all property levied upon, and creates a custodial relationship between the person holding the property and the IRS so that the property comes into the constructive possession of the Government." *National Bank of Commerce*, 472 U.S. at 720, 105 S.Ct. at 2924 (citations omitted).

In *National Bank of Commerce*, the Supreme Court compared the administrative levy under 26 U.S.C. § 6332 to a lien foreclosure suit under 26 U.S.C. § 7403. The Court noted that the administrative levy protects the government "against diversion or loss while such claims are being resolved." 472 U.S. at 721, 105 S.Ct. at 2924. The Court specifically held that the IRS had a right to levy on the taxpayer's joint bank accounts pursuant to 26 U.S.C. §§ 6331 and 6332 for delinquent federal income taxes even though the accounts were in joint names because the taxpayer had an absolute right under state law and under his contract with the bank to compel the payment of the outstanding balances in the accounts. *Id.* at 725–26, 105 S.Ct. at 2926–27.

■ Under 26 U.S.C. § 6332(d), if the custodian of the taxpayer's property honors the levy, the custodian is "discharged from any obligation or liability to the delinquent taxpayer with respect to such property or rights to property arising from such surrender or payment." However, if the custodian refuses to surrender the property in response to the levy, he is personally liable to the government in an amount equal to the value of the property not surrendered. 26 U.S.C. § 6332(c)(1). The custodian has two defenses for failure to comply with a tax levy: 1) the custodian is not in possession of the taxpayer's property; or, 2) the property is subject to a prior judicial attachment or execution. *National Bank of Commerce*, 472 U.S. at 721–22, 105 S.Ct. at 2924–25; *State Bank of Fraser v. United States*, 861 F.2d 954, 958 (6th Cir.1988).

Because GM does not claim that the account receivables were subject to a prior judicial attachment or execution, the question is whether, at the time the notice of levy was received, GM held property in which Oakwood had any interest subject to levy. If it did, then it is personally liable under section 6332(c)(1) for the amount the government would have collected by the levy.

■ In determining whether the account receivables were subject to levy, state law determines "the nature of the legal interest which the taxpayer had in the property." *National Bank of Commerce*, 472 U.S. at 722, 105 S.Ct. at 2925. The government claims that at the time the notice of levy was served, GM clearly had property or rights to property that were subject to levy

for Oakwood's tax liability. The government argues that account receivables are property or rights to property of a taxpayer that may be levied upon, citing *United States v. Bank of Celina*, 721 F.2d 163, 167 (6th Cir.1983); *United States v. Weintraub*, 613 F.2d 612 (6th Cir.1979), *cert. denied*, 447 U.S. 905, 100 S.Ct. 2987, 64 L.Ed.2d 854 (1980).

We think the *Celina* and *Weintraub* cases cited by the government can be distinguished from the case at bar. *Celina* was a bank deposit setoff case which held that the tax assessment giving rise to the tax lien attached before the account receivables were transferred to the bank. *Weintraub* was a statute of limitations case which held that because a sovereign is exempt from operation of the statute of limitations, the fact that the IRS did not sue the defendant to collect on its attachment for 13 years did not preclude imposition of the liability. *Id.* at 621.

GM argues that it was not in possession of property or an interest in property belonging to Oakwood at the time of the levy. It claims that once the Bank notified GM that under the terms of the assignment contained in Oakwood's security agreement with the Bank, GM should pay the Bank the account receivables, Oakwood no longer had a property interest in those account receivables.

Under Michigan law, an assignment is defined as a

> transfer or setting over of property, or of some right or interest therein, from one person to another, and unless in some way qualified, *it is properly the transfer of one's whole interest* in the estate, or chattel or other thing. It is the act by which one person transfers to another or causes to vest in another, his right to property or interest therein.

*Allardyce v. Dart*, 291 Mich. 642, 644, 289 N.W. 281 (1939) (emphasis added).

The Michigan Court of Appeals, citing *Allardyce*, defined an assignment as a "transfer or setting over of property from one person or entity to another and, unless in some way qualified, transfers one's whole interest." *Moore v. Baugh*, 106 Mich.App. 815, 819, 308 N.W.2d 698 (1981). *Moore* concerned the assignment of a judgment and the court found that "once a judgment is assigned, the assignor is completely disassociated from the rest except to the extent that his obligor may have rights against him which would then be assertable [sic] against the assignee." *Id.*

Moreover, M.C.L. § 440.9318(3) provides that: "the account debtor [GM] is authorized to pay the assignor [Oakwood] until the account debtor receives notification that the amount due or to become due has been assigned and that payment is to be made to the assignee [Bank]." Thus, the rights of the assignor and the assignee are fixed at the time of notification of the assignment.

■ It is not disputed that Oakwood assigned its account receivables and contract rights to the Bank. The effect of the assignment under Michigan law was that all of Oakwood's contract rights in its account receivables were transferred to the Bank when Oakwood's account debtors were notified of the assignment. This post-default notice of assignment on February 19, 1982, divested Oakwood of legal and equitable title to the funds and deprived Oakwood of the right to sue for their recovery. Therefore, when GM received notice of the assignment, it was obligated to pay the Bank and could not pay the debt to Oakwood.

Because the IRS "steps into the taxpayer's shoes" and acquires whatever rights the taxpayer has with respect to the property, the IRS can succeed to rights no greater than those the taxpayer possesses. Thus, when money or property held by a third party is not the taxpayer's because it was assigned to another before the levy, it is no longer subject to the levy. At the time of the levy on February 24, 1982, the Bank, not Oakwood, owned the funds the IRS sought.

Therefore, we conclude that because of the assignment on February 19, 1982, Oakwood no longer possessed any property right in the disputed funds. Michigan law does not support the trial court's conclusion that some right to the funds remained

in Oakwood on February 24, 1982, which would permit Oakwood to control payment of the funds. The Supreme Court has stated: "It would indeed be anomalous to say that the taxpayer's 'property and rights to the property' include property in which under the relevant state law, he had no property interest at all." *Aquilino v. United States*, 363 U.S. 509, 513 n. 3, 80 S.Ct. 1277, 1280 n. 3, 4 L.Ed.2d 1365 (1960).

Thus, because section 6332(a) cannot resurrect a taxpayer's property rights that were previously completely extinguished, we hold that the lower court erred in concluding that Oakwood had sufficient property rights upon which the government could levy.

### B. Lien Theory

Even if we were to decide that on the day it received notice of the levy, GM held property in which Oakwood had some interest, we would then have to decide whether the government had a valid lien in Oakwood's property. The government claims that the Bank possessed only a security interest in the account receivables and that the government's lien is superior to that of the Bank's. The government argues that GM mistakenly acted on the belief that the Bank had a superior lien in the account receivables when it paid the Bank instead of the IRS. GM argues, on the other hand, that the government's lien theory is without merit because the tax lien did not attach to the account receivables.

Federal tax liens arise when unpaid taxes are assessed and continue until the resulting liability is either satisfied or becomes unenforceable through the lapse of time. 26 U.S.C. § 6322. The government's argument assumes that the account receivables in this case were impressed with a federal tax lien. However, a tax lien cannot attach to property which has been previously assigned or transferred by the taxpayer at the time the assessment is made. Assignments made prior to a tax assessment preclude lien attachment.

In this case, Oakwood assigned its right to its account receivables to the Bank on February 6, 1980. The assessment made against Oakwood for unpaid withholding and Federal Insurance Contribution Act taxes occurred March 9, 1981, well after Oakwood assigned its account receivables to the Bank. The assignment extinguished any property rights in those receivables to which the subsequent federal tax lien might have attached.

As noted previously, state law determines the nature of the property right. *National Bank of Commerce*, 472 U.S. at 722, 105 S.Ct. at 2925. Under Michigan law, an assignment of after-acquired account receivables defeats the property interest of other creditors. *In re United Fuel & Supply Co.*, 250 Mich. 325, 230 N.W. 164 (1930). Even though the assignment grants the assignor, as agent of the assignee, a revocable license to collect the accounts in the usual course of business, it does not impair the absolute nature of the assignment. *Id.* at 330–32, 230 N.W. 164. This court has recognized that under Michigan law, an assignment of future account receivables is effective when made, not when the specific account comes into existence. *Union Trust Co. v. Bulkeley*, 150 F. 510 (6th Cir.1907). Thus, it is clear that the assignment by Oakwood of future account receivables was absolute as of February 6, 1980, and left Oakwood with no property rights to which the lien could attach.

### III.

For the reasons stated, we REVERSE the judgment of the district court, REMAND the matter, and direct that summary judgment be entered for the defendant.