21 F.3d 428
 73 A.F.T.R.2d 94-1784
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Thomas R. FRIERSON, II, Defendant-Appellant.
 No. 93-5097.
 United States Court of Appeals, Sixth Circuit.
 April 5, 1994.
 
 Before: JONES and BOGGS, Circuit Judges; and FEIKENS, Senior District Judge.*
 PER CURIAM.
 
 
 1
 Thomas R. Frierson, II, appeals an adverse ruling by the district court on cross-motions for summary judgment in this action brought against him by the United States to recover funds levied upon by the Internal Revenue Service. Frierson had conducted a public sale of property that had been mortgaged by a taxpayer who owed money to the IRS and who also had defaulted on loans secured by the property. The sale apparently resulted in surplus proceeds upon which the IRS levied. The sale was later rescinded and the property resold, with no resulting surplus proceeds. Frierson claimed never to have held any funds upon which the IRS could levy. The district court ruled in favor of the United States on the basic liability issue, but against the United States regarding the assessment of a penalty against Frierson for failure to surrender the proceeds. For the reasons discussed herein, we affirm the judgment of the district court.
 
 
 2
 * The material facts of this case are not in dispute. In December 1978, Jimmy C. Newcomb, the taxpayer, executed a deed of trust on Lot 20 of Willmore Estates in Jefferson County, Tennessee, in favor of Home Federal Savings & Loan, to secure a loan. In July 1984, Newcomb executed a deed of trust on Lots 16, 18, and 21, and a second deed of trust on Lot 20, in favor of First Tennessee Bank, to secure another loan. H.M. Bacon, a partner in a local Tennessee law firm, was the named trustee on First Tennessee's deed of trust.
 
 
 3
 In 1985, the IRS filed a notice of tax lien with respect to Newcomb's property. The lien arose from an unpaid employment tax penalty and was junior to the deeds described above. Newcomb then defaulted on his obligations to First Tennessee and to Home Federal. In March 1986, First Tennessee instructed the trustee to foreclose on its deed of trust on all four lots. Bacon, the trustee, assigned the task to Frierson, an associate in his law firm.
 
 
 4
 On March 24, Home Federal assigned its deed of trust on Lot 20 to First Tennessee. Thus, at the time of the foreclosure, First Tennessee held both deeds of trust on Lot 20. Frierson, however, was not aware of the assignment and did not attempt to have the two deeds of trust foreclosed in the same proceeding. He only sought to foreclose on the 1984 First Tennessee deed of trust.
 
 
 5
 On March 26, a "Notice of Sale," prepared and signed by Frierson, was sent to the IRS. The Notice stated that there would be a sale of the four lots on April 25 and stated that the liens on the property were as follows: Home Federal's lien in the amount of $42,000; First Tennessee's lien in the amount of $52,000; and the IRS's subordinate lien in the amount of $7000.
 
 
 6
 On three dates in April 1986, Frierson placed, in Bacon's name, a "Trustee's Sale Notice" advertisement in a local newspaper. The "Trustee's Sale Notice" stated that all four lots would be sold for cash and that the sale was being conducted pursuant to the authority of First Tennessee's 1984 (i.e., subordinate) deed of trust. The advertisements specifically stated that the sale was subject to the first mortgage held by Home Federal ("Home Federal ... is the owner and holder of a first deed of trust on the subject property ... and this foreclosure sale shall be, in all things, subject to this first mortgage"). Thus, the publication stated that the four lots would be sold as a package, conducted under the authority of the 1984 deed of trust to secure the indebtedness of the taxpayer to First Tennessee and subject to Home Federal's interest. (At the time of the sale, Home Federal's interest had become First Tennessee's through the assignment, but to foreclose on the Home Federal interest would require a separate sale.)
 
 
 7
 Frierson conducted the foreclosure sale on April 25. The only bidder at the foreclosure sale was William A. Flagle, a senior vice president of First Tennessee, who successfully bid $65,000 on the bank's behalf. No cash was paid (because First Tennessee was both "buyer" and "seller"). Flagle mistakenly had believed that both deeds of trust were being foreclosed--he thought that all of the $65,000 would be applied against the $93,000 (the remaining balances of $42,000 plus $51,000) owed by Newcomb to First Tennessee. Because the debt on the foreclosed deed of trust totalled $51,000 and the bid was for $65,000, there was in fact a surplus of $14,000, to which Newcomb was entitled. The IRS served a notice of levy on Frierson on May 6, demanding, from the $14,000 surplus, payment of the taxes and interest owed by Newcomb (some $8600).
 
 
 8
 Frierson did not honor the IRS's levy. Bacon determined that, because of the "mistake in the foreclosure notice" and the resulting "erroneous bid" by First Tennessee, there had been no completed sale and that a new sale would have to be conducted. First Tennessee agreed. Bacon destroyed the deed that he was to have given to First Tennessee (he had never recorded the deed or delivered it to First Tennessee) and at two other public auctions in July 1986, after readvertising the sales of the lots, resold the lots for a total of $81,000. After the two deeds of trust were paid off, there was no surplus for Newcomb or the IRS.
 
 
 9
 In June 1992, the United States brought suit under 26 U.S.C. Sec. 6332(d), alleging that Frierson should be held liable for the amount of the levy plus a 50% penalty for failure to surrender the proceeds levied upon. The district court ruled in favor of the United States on the basic liability issue. The court stated that Frierson had breached his duty to Newcomb, the mortgagor, in agreeing to the rescission of the first sale. The court rejected the contention that the first sale had been rendered void by an "error" in the notice of sale. The court found that First Tennessee had not been misled by an error in the notice, concluding that First Tennessee had "simply bid too much on the property" and that, because its "error was unilateral, [ ] the bank should have been bound by its bid." However, the district court ruled in favor of Frierson with respect to the penalty. The court concluded that because Frierson never had any "funds in his possession upon which the IRS could levy," his "failure to surrender this property cannot be considered 'without reasonable cause' " within the meaning of the applicable provision of the Internal Revenue Code. The United States originally appealed this decision, but, by the parties' stipulation and with the district court's consent, that appeal has been dismissed. Frierson's is the only appeal before this court.
 
 II
 
 10
 We review a grant of summary judgment de novo. EEOC v. University of Detroit, 904 F.2d 331, 334 (6th Cir.1990). As noted above, the material facts in this case are not in dispute.
 
 
 11
 The failure of a taxpayer to pay taxes after demand gives rise to a tax lien "in favor of the United States upon all property and rights to property, whether real or personal, belonging to" the taxpayer. 26 U.S.C. Sec. 6321. The Secretary of the Treasury may collect such unpaid taxes by means of a levy on the taxpayer's "property and rights to property." 26 U.S.C. Sec. 6331. Section 6332 provides for the surrender of such property when it is held by another person:
 
 
 12
 (a) Requirement.-- ... any person in possession of (or obligated with respect to) property or rights to property subject to levy upon which a levy has been made shall, upon demand of the Secretary, surrender such property or rights (or discharge such obligation) to the Secretary, except such part of the property or rights as is, at the time of such demand, subject to an attachment or execution under any judicial process.
 
 
 13
 * * *
 
 
 14
 (c) Enforcement of levy.--
 
 
 15
 (1) Extent of personal liability.--Any person who fails or refuses to surrender any property or rights to property, subject to levy, upon demand by the Secretary, shall be liable in his own person and estate to the United States in a sum equal to the value of the property or rights not so surrendered, but not exceeding the amount of taxes for the collection of which such levy has been made, together with costs and interest on such sum.... Any amount (other than costs) recovered under this paragraph shall be credited against the tax liability for the collection of which such levy was made.
 
 
 16
 (2) Penalty for violation.--In addition to the personal liability imposed by paragraph (1), if any person required to surrender property or rights to property fails or refuses to surrender such property or rights to property without reasonable cause, such person shall be liable for a penalty equal to 50 percent of the amount recoverable under paragraph (1)....
 
 
 17
 26 U.S.C. Sec. 6332.[1] Thus, under Sec. 6332, the IRS's notice of levy " 'gives the IRS the right to all property levied upon, and creates a custodial relationship between the person holding the property and the IRS so that the property comes into the constructive possession of the Government.' " United States v. General Motors Corp., 929 F.2d 249, 251 (6th Cir.1991) (quoting United States v. National Bank of Commerce, 472 U.S. 713, 720, 105 S.Ct. 2919, 2924 (1985) (citations omitted)). "The statutory language 'all property and rights to property,' appearing in Sec. 6321 (and, as well, in Secs. 6331(a) and, essentially, in 6332(a)), is broad and reveals on its face that Congress meant to reach every interest in property that a taxpayer might have." National Bank of Commerce, 472 U.S. at 719-20, 105 S.Ct. 2924 (citations omitted); State Bank of Fraser v. United States, 861 F.2d 954, 958 (6th Cir.1988). If the custodian "refuses to surrender the property in response to the levy, he is personally liable to the government in an amount equal to the value of the property not surrendered." General Motors, 929 F.2d at 251.
 
 
 18
 This court recognizes two defenses that the custodian may assert for failure to comply with the IRS's levy: (1) the custodian is not in possession of the taxpayer's property; or (2) the property is subject to a prior judicial attachment or execution. Ibid. (citing National Bank of Commerce, 472 U.S. at 721-22, 105 S.Ct. at 2924-25, and State Bank of Fraser, 861 F.2d at 958). Here, there is no claim that the second defense applies. Further, no defect in the notice of levy or in the tax lien is alleged. Thus, the issue is whether, at the time the notice of levy was served on Frierson (May 6, 1986), Frierson held or was obligated with respect to property in which the taxpayer had any interest subject to levy.
 
 
 19
 State law determines the nature of the legal interest that the taxpayer had in the property. Ibid. (citing National Bank of Commerce, 472 U.S. at 722, 105 S.Ct. at 2925). Under Tennessee law, a sale at a public auction is complete when the auctioneer's hammer falls. Thus, in Johnson v. Haynes, 532 S.W.2d 561 (Tenn.App.1975), at the fall of the hammer at a public auction for the sale of land, there was a contract for sale of the land for cash, and the auctioneer could not change the terms of the sale after the hammer fell. By analogy to the sale of goods, a "sale by auction is complete when the auctioneer so announces by the fall of the hammer or in other customary manner." Tenn.Rev.Code Ann. Sec. 47-2-328. At that point, the buyer is entitled to the goods auctioned and the seller to the price bid. See also Bank of Myrtle Point v. Security Bank of Coos County, 79 Or.App. 184 (1986) (a bidder is bound by his bid absent fraud or misrepresentation and cannot rescind the sale on ground of "shared mistake"). Further, the conditions set out in the advertisements of the April 25 sale are binding. See Moore v. Queener, 62 Tenn.App. 490, 504 (1970). Thus, only the 1984 First Tennessee deed was foreclosed by the terms of the sale.
 
 
 20
 Under these principles of Tennessee law, Newcomb was entitled to the $14,000 in surplus proceeds at the close of the auction on April 25. The contract was complete when the auction closed, and $51,000 of the $65,000 sale price went to foreclosing the deed, leaving $14,000 for Newcomb. At that point, Frierson, who had conducted the auction on a cash basis, was obligated to Newcomb for the $14,000.
 
 
 21
 Frierson argues that the sale was rescinded and that therefore there was never any property that could be subject to the IRS's levy. Frierson acknowledges that a contract cannot be rescinded by the two parties when the rights of third parties have intervened, but contends that the IRS is only an unintentional beneficiary without the power to enforce the contract. However, when the April 25 sale was completed, Newcomb was entitled to the surplus proceeds, and the IRS was entitled to levy upon those proceeds. Whether the sale could be rescinded later (with or without Newcomb's consent, which apparently Frierson and First Tennessee did not obtain) has no bearing on Frierson's personal liability under 26 U.S.C. Sec. 6332(c), arising out of his obligation with respect to the surplus proceeds.
 
 
 22
 Finally, Frierson argues on appeal, apparently for the first time, that he was only the agent of the trustee, Bacon, and was not himself the trustee.[2] Thus, he says, the IRS may seek the funds from Bacon only. Although Bacon was in fact the trustee for the deeds of trust involved in the transactions in this case, the IRS may nonetheless seek recovery from Frierson. The terms of the sale included that it was "for cash." Frierson as the auctioneer was "obligated with respect to" the net proceeds of the sale; Newcomb, the mortgagor, was entitled to those proceeds. Because Frierson was obligated with respect to property or rights to property subject to an IRS tax levy, the terms of Sec. 6332(a) were satisfied, and the IRS properly could serve Frierson with a notice of levy.
 
 
 23
 Frierson questions how he can be required to pay over money to the United States when he never actually possessed the $14,000, and, indeed, the district court declined to award the United States the 50% penalty precisely because Frierson never had the cash in his hands. However, as this court has stated on several occasions, the "appropriate remedy for one in appellant's position, upon whom a notice of levy has been served which he believes to be wrongful, is to surrender the property and bring an action against the government pursuant to Internal Revenue Code Sec. 7426." United States v. Weintraub, 613 F.2d 612, 622 (6th Cir.), cert. denied, 447 U.S. 905, 100 S.Ct. 2987 (1979); State Bank of Fraser, 861 F.2d at 961 n. 6 (quoting Weintraub ). Such a course of action furthers the " 'underlying principle' justifying the administrative levy [--] 'the need of the government promptly to secure its revenues.' " National Bank of Commerce, 472 U.S. at 721, 105 S.Ct. at 2924 (quoting Phillips v. Commissioner, 283 U.S. 589, 596, 51 S.Ct. 608, 611 (1931)). Despite the six-year delay by the United States in initiating this Sec. 6332(d) recovery action, the district court correctly concluded that the United States is entitled to the amount of the proceeds upon which the IRS levied.
 
 III
 
 24
 The judgment of the district court is AFFIRMED.
 
 
 
 *
 The Honorable John Feikens, Senior United States District Judge for the Eastern District of Michigan, sitting by designation
 
 
 [1]
 Sec. 6332(c) was redesignated Sec. 6332(d) for levies issued on or after July 1, 1989
 
 
 [2]
 However, Frierson's memorandum accompanying his motion for summary judgment repeatedly refers to Frierson as the trustee