**CPS ELECTRIC, LTD. and American Manufacturers Mutual Insurance Company, Plaintiffs,**

v.

**UNITED STATES of America; Internal Revenue Service; Amdursky, Pelky, Fennell, & Wallen, P.C.; and Dean P. Koski, Defendants.**

**No. 5:01–CV–199 (FJS/DEP).**

United States District Court,
N.D. New York.

May 1, 2002.

122

United States Department of Justice, Tax Division (Karen Wozniak, of counsel), Washington, DC, for defendants United States and the Internal Revenue Service,

Amdursky, Pelky, Fennell and Wallen, P.C. (Joseph E. Wallen, of counsel), Oswe-go, NY, for defendants Amdursky, Pelky, Fennell and Wallen, P.C., Dean P. Koski.

## MEMORANDUM–DECISION AND ORDER

SCULLIN, Chief Judge.

## I. INTRODUCTION

On February 8, 2001, CPS Electric, Ltd. ("CPS") and American Manufacturers Mutual Insurance Company ("AMMIC") filed this interpleader action seeking to determine the interests of the United States, Amdursky, Pelky, Fennell & Wallen, P.C. ("Amdursky") and Dean P. Koski in $300,000, representing the gross proceeds of a settlement between CPS, AMMIC and Koski of a personal injury action that Koski had filed on March 24, 1995. The United States claims an interest of $140,505.90, plus interest and statutory additions from July 31, 1995, in the interpleaded funds by virtue of a Notice of Levy the Internal Revenue Service ("IRS") served upon CPS on or about July 10, 1995.

On March 20, 2001, Amdursky and Koski filed cross-claims against the United States alleging (1) that the Government's levy had lapsed and, therefore, was unenforceable; (2) that at the time that the levy was served on CPS, CPS had no fixed and determinable obligation related to Koski's personal injury action; (3) that the Government's levy was "illegal pursuant to 26 U.S.C. § 6323(b)(8);"[1] (4) that the IRS failed to provide Koski and Amdursky with "any due process rights pursuant to 26 U.S.C. §§ 6320 and 6330 prior to the enforcement of the claimed levy;" and (5) that IRS employees had recklessly or intentionally disregarded numerous provi-

---

1. This cross-claim is no longer at issue because the United States has disclaimed any interest in Amdursky's attorney's lien.

sions of the Internal Revenue Code and caused Koski and Amdursky actual, direct economic damages.

In a Memorandum–Decision and Order, dated August 24, 2001, the Court instructed CPS and AMMIC to deposit the disputed settlement proceeds in the Court's Registry. As instructed, CPS and AMMIC deposited the $300,000 in settlement proceeds in the Court's Registry on October 5, 2001, and, pursuant to the Court's Order, they were then dismissed from this action.

Subsequently, on October 30, 2001, the United States filed a notice of disclaimer, disclaiming any interest in $102,972.93 of the $300,000 in settlement proceeds. This amount represented Amdursky's attorneys' fees and reimbursement of costs and disbursements, which had been incurred in connection with Koski's personal injury lawsuit that had generated the settlement proceeds.

Presently before the Court are Amdursky's and Koski's motion for summary judgment and the United States' motion for partial summary judgment.[2]

## II. DISCUSSION

### A. Timeliness of the levy

■ Section 6502(a) of Title 26 provides that a tax liability may be collected by levy if the levy is made within ten years after the assessment of the tax. A levy that is made within this period of limitations remains enforceable to the extent of the value of the levied-upon property even if the person who receives the levy does not surrender the subject property within that period. *See* 26 C.F.R. § 301.6343–1(b)(1);

*see also United States v. Weintraub,* 613 F.2d 612, 620 (6th Cir.1979) (noting that "the **only** limitation of § 6502 is that the levy be made or proceeding in court begun against the taxpayer within [ten] years of the assessment" (emphasis added)).

In the present case, the IRS made tax assessments against Koski with respect to the 1978 through 1982 income tax periods on June 10, 1986; with respect to the 1983 income tax period on November 11, 1985; with respect to the 1984 income tax period on September 2, 1985; and with respect to the 1985 income tax period on October 13, 1986. Within ten years of all of these dates of assessment, on or about July 10, 1995, the IRS served CPS with a Notice of Levy with respect to Koski's outstanding income tax liabilities for the 1978 through 1985 income tax periods.

Although acknowledging that the IRS served its Notice of Levy within ten years of the tax assessment, Amdursky and Koski nonetheless argue that because the IRS did not commence the present collection action until October 2000, the levy is untimely. To support this argument, Amdursky and Koski rely upon the language of § 6502(b), which provides that "[t]he date on which the levy on property or rights to property is made shall be the date on which the notice of seizure provided in section 6335(a) is given." 26 U.S.C. § 6502(b) (Supp.2001).

Amdursky and Koski claim that the United States must take specific steps to meet § 6502's statute of limitations. It must either serve a Notice of Levy followed by a Notice of Seizure or it must commence a proceeding to collect the tax or reduce it to judgment within ten years

---

**2.** As part of its motion for partial summary judgment, the United States seeks a declaration that the United States has a valid levy with respect to the balance of the settlement proceeds that have been paid into the Court's

Registry and an Order directing the Clerk of the Court to pay the sum of $197,027.07 to the United States. *See* United States' Notice of Motion, dated December 28, 2001, at 1–2.

of the assessment.[3] According to Amdursky and Koski, because the IRS neither served a Notice of Seizure nor commenced a collection proceeding within ten years of the date of the assessment, this action is barred.

The Court disagrees. In *United States v. Donahue Indus., Inc.*, 905 F.2d 1325, 1330 (9th Cir.1990), the Ninth Circuit rejected the same argument, noting that the defendant had failed to distinguish between levies on tangible property and levies on intangible property. The court explained that because the IRS cannot physically seize intangible property, the regulations provide for levy by proper service of notice. *See id.* at 1329 (citing 26 C.F.R. § 301.6331–1(a)(1) (1989)).[4] Furthermore, the court reasoned that if the government could not effect levy by notice of levy, it would be unable to satisfy the statute of limitations in administrative levy actions involving intangible property without actually filing a court action—a result which would be inconsistent with § 6502(a)(1)'s provision that unpaid taxes may be collected by levy **or** by proceeding in court within the limitations period. *See id.* at 1330 (citing 26 U.S.C. § 6502(a)(1)). Thus, the court concluded

that "[i]n the case of intangible property, a levy is made for all purposes—**including satisfaction of the statute of limitations** set forth in 26 U.S.C. § 6502(a)(1)—by serving a notice of levy pursuant to 26 C.F.R. § 301.6331(a)(1)." *Id.*[5] (emphasis added).

The Court agrees with the Ninth Circuit's analysis of § 6502's requirements. Therefore, the Court concludes that, because the IRS served its Notice of Levy on CPS within ten years of the dates that it assessed taxes against Koski, the levy in this case is timely and, thus, enforceable. Accordingly, the Court denies Amdursky's and Koski's motion for summary judgment and grants the United States' cross-motion for partial summary judgment with respect to Amdursky's and Koski's first cross-claim.

**B. CPS's liability with respect to Koski's injury at the time that CPS was served with the Notice of Levy**

 Pursuant to § 6331 of Title 26, "[i]f any person liable to pay any tax neglects or refuses to pay the same within 10 days after notice and demand, it shall be lawful for the Secretary to collect such tax

---

**3.** The cases that Amdursky and Koski cite to support their Notice of Seizure argument did not address this issue. In *United States v. Red Stripe, Inc.*, 792 F.Supp. 1338 (E.D.N.Y.1992), the court found that the IRS had filed its complaint exactly six years (which was the relevant statute of limitations at the time) after the assessment of taxes and that, therefore, the complaint was timely. At issue in *Red Stripe* was the date that the taxes had been assessed, not whether the IRS had served a Notice of Seizure. In fact, there is no mention of a Notice of Seizure in that case. Nor was there any mention of a Notice of Seizure in *Valley Bank of Nev. v. City of Henderson*, 528 F.Supp. 907 (D.Nev.1981), another case that Amdursky and Koski cite to support their argument.

**4.** Section 301.6331–1(a)(1) provides that

Levy may be made by serving a notice of levy on any person in possession of, or obligated with respect to, property or rights to property subject to levy, including receivables, bank accounts, evidences of debt, securities, and salaries, wages, commissions, or other compensation.
26 C.F.R. § 301.6331–1(a)(1).

**5.** The Ninth Circuit's holding is consistent with Supreme Court decisions that have held that levy upon intangible property "is effected by serving the appropriate form upon the party holding the property or rights to property." *G.M. Leasing Corp. v. United States*, 429 U.S. 338, 350, 97 S.Ct. 619, 50 L.Ed.2d 530 (1977) (citing Treas.Reg. § 301.6331–1(a)(1), 26 C.F.R. § 301.6331–1(a)(1) (1976)) (other citation omitted).

... by levy upon all property and rights to property ... belonging to the person." 26 U.S.C. § 6331(a). State law determines whether a taxpayer has rights. *See United States v. Nat'l Bank of Commerce*, 472 U.S. 713, 722, 105 S.Ct. 2919, 86 L.Ed.2d 565 (1985). "[A] levy extends only to property possessed and obligations which exist at the time of the levy." 26 C.F.R. § 301.6331–1(a). "Obligations exist when the liability of the obligor is fixed and determinable although the right to receive payment thereof may be deferred until a later date." *Id.* An obligation is fixed and determinable "[a]s long as the events which gave rise to the obligation have occurred and the amount of the obligation is capable of being determined in the future[.] ... It is not necessary that the amount of the obligation be beyond dispute." *United States v. Antonio*, No. Civ. 86–1053, 1991 WL 253021, *6 n. 2 (D.Haw. Sept. 24, 1991) (citation omitted).

Amdursky and Koski assert that as of July 10, 1995, the date on which the IRS served a Notice of Levy on CPS, CPS owed no obligation to Koski and, therefore, the levy attached to nothing. They explain that at that time CPS's only potential liability to Koski was based upon a theory of vicarious liability and that this liability depended upon two alternate theories as to which Koski had the burden of proof— either the driver of the truck that struck and injured Koski was an employee of CPS or the driver was using the truck with CPS's knowledge and permission and that the driver was negligent, thus binding CPS. Moreover, according to Amdursky and Koski, under New York law, CPS could not be subject to an action for recovery of Koski's non-economic loss unless and until there was a determination that Koski suffered a serious injury, a determination that was never made because the parties settled the action prior to trial.

Finally, Amdursky and Koski contend that, even assuming that CPS was liable to Koski prior to the settlement, any such purported liability was worth nothing until the value of that liability was determined by a jury or created by a settlement. The settlement agreement was not reached until September 5, 2000. However, CPS's actual obligation or liability to pay the settlement proceeds to Koski was not triggered until a period of twenty-one days had elapsed from tender of the General Release and Stipulation Discontinuing Action to the attorneys for CPS on September 21, 2000. Therefore, Amdursky and Koski assert that CPS's obligation to pay Koski was not fixed and determinable until October 12, 2000.

Amdursky's and Koski's argument finds support in *United States v. Morey*, 821 F.Supp. 1438 (W.D.Okla.1993). In that case, the taxpayer, Burger, had been issued an assessment on April 1, 1985, relating to his 1983 federal income taxes. When the IRS learned about a suit between Burger and Morey, it served a Notice of Levy on Morey June 24, 1987, seeking to obtain all money or other obligations Morey owed to Burger. The suit was hotly contested and, prior to the case being tried, Burger died. Subsequently, Morey entered into a Release and Indemnity Agreement with Burger's Estate in settlement of the litigation. The settlement called for Morey to pay the Estate the sum of $100,000 in exchange for a complete release and a dismissal of the litigation with prejudice. Aware of the settlement, the IRS made a demand on Morey's lawyer for the amount of the levy, giving Morey five days to respond or face proceedings under § 6332. Morey asserted that the levy did not reach the monies he had paid to the Estate.

The issue before the court was "whether, at the time the levy was served upon

Morey, Morey was obligated with respect to property or rights to property subject to the levy." *Morey*, 821 F.Supp. at 1440. Morey argued that he was not because his liability on the contract was disputed. The court agreed.

The court began its analysis by noting that " '[b]ecause the IRS "steps into the taxpayer's shoes" and acquires whatever rights the taxpayer has with respect to the property, the IRS can succeed to rights no greater than those the taxpayer possesses.' " *Id.* at 1441 (quoting *U.S. v. General Motors Corp.*, 929 F.2d 249, 252 (6th Cir. 1991)). Next, looking to Oklahoma law, the court determined that a chose in action constitutes intangible personal property. *See id.* The court went on to explain that by virtue of this chose in action, Burger had an intangible, contingent interest in personal property to which the IRS succeeded on the date of the levy. However, although the court concluded that a federal tax lien could attach to a contingent interest, it held that the contingent interest must be vested. *Id.* at 1442 (citation omitted). Relying upon 26 U.S.C. § 6332(d), which provides that for purposes of enforcement the nonsurrendering person shall be liable " 'in a sum equal to the *value* of the property or rights not so surrendered, but not exceeding the amount of taxes,' " *id.* (quoting 26 U.S.C.A. § 6332(d) (West 1989 & Supp.1992)), the court concluded that "for purposes of enforcing a levy, one must be able to fix and determine the value of the taxpayer's property interest on the date of levy in order for there to be property subject to levy in the hands of the obligor." *Id.* Accordingly, the court held that although "the taxpayer held a chose in action to which, upon levy, the IRS succeeded[,][a]ny obligation arising thereunder was not vested, or fixed and determinable on the date of levy [and,] [t]herefore, defendant Morey was not 'in possession of

(or obligated with respect to) property or rights to property[.]' " *Id.* (quoting 26 U.S.C.A. § 6332(a) (West 1989 & Supp. 1992)).

A contrary result was reached in *Simon v. Playboy Elsinore Assocs.*, CIV.A. No. 90–6607, 1991 WL 71119 (E.D.Pa. Apr.29, 1991), in which the IRS had made seven assessments against the taxpayer plaintiffs between October 23, 1978 and May 23, 1983 for unpaid federal income taxes due for the periods of December 31, 1977 through December 31, 1982. On January 8, 1984, plaintiff Patricia Simon slipped and fell at the Playboy Hotel in Atlantic City. As a result of the plaintiffs' outstanding tax liability, on June 6, 1984, the IRS served a Notice of Levy on Playboy and on counsel for the Simons, pursuant to § 6331(a), demanding all property and property rights belonging to the Simons in Playboy's possession. Eight months later, on February 8, 1985, the Simons instituted an action against Playboy to recover damages allegedly resulting from the January 8, 1984 accident, and the parties reached a settlement agreement on November 14, 1989.

The Simons contended that the Notice of Levy was invalid when served because the parties had not reached a finalized settlement agreement. To the contrary, the IRS argued that the Simons' as-of-then-unliquidated-and-unsettled tort claim was a property right against which a levy could be asserted. Relying upon a number of cases, including a New York case, *In re Estate of Walton*, 20 A.D.2d 386, 247 N.Y.S.2d 21 (1st Dep't 1964), the court held that an unliquidated personal injury claim is a property right against which a federal tax lien may be asserted. Therefore, the court held that the IRS had properly asserted the tax lien against the Simons even though the Notice of Levy

and Final Demand were served prior to the execution of the settlement agreement.

The case upon which *Simon* relied, although in some respects distinguishable from the present case, is instructive. In that case, the issue was which of two liens had priority. The United States had assessed Walton for unpaid income taxes on July 6, 1956 and filed a Notice of Lien for the assessment on March 4, 1958. Walton was injured on March 20, 1958 when he was struck by a motor vehicle. As a result of the accident, he was taken to the hospital, received treatment, and was issued a bill for services rendered. When Walton died on March 23, 1960, the hospital bill remained unpaid. Prior to his death, Walton had commenced an action to recover damages for injuries suffered in the accident, which was compromised by his administratrix by leave of the court.

The issue before the court was whether the IRS's lien or the hospital's lien had priority. The court noted that resolution of this issue depended in part upon the nature of the right of action. "Is it personal property to which a lien may attach, or can the lien attach only to the proceeds, the fruit of the right of action?" *Id.* at 389, 247 N.Y.S.2d 21. The court explained that

> If a right of action be property, such property is created at the moment of wrongful impact with consequential injuries. The Federal lien would attach immediately though the extent of satisfaction must await the amount of recovery, less authorized reductions or recognized priorities.

*Id.*

The court went on to state that Walton's income taxes became due at the time he was required to file his return and the lien arose when the assessment was filed. "Such lien is a continuing one and 'covers property or rights to property in the delin-

quent's hands at any time prior to expiration' of the lien." *Id.* at 390, 247 N.Y.S.2d 21 (quotation omitted). The court also noted that New York law recognizes a right of action as property or a right to property and that "[i]t is not essential that the property be reduced to actual physical possession of the tax delinquent ... or that it be fixed in amount or that the delinquent have legal title when the lien attaches[.]" *Id.* (internal citations and other citation omitted). Therefore, the court concluded that because under New York law a right of action is property, "the Government's lien, having been duly assessed and filed, became choate upon the occurrence of the accident" and had priority over the Hospital's lien which subsequently became choate. *Id.* at 391, 247 N.Y.S.2d 21.

■ The Court finds the reasoning of *Simon* more persuasive than that of *Morey*, particularly in light of the *Simon* court's reliance upon *In re Estate of Walton*. Thus, the Court finds that in the present case, all of the events which gave rise to CPS's obligation to Koski occurred at the time that Koski was injured. This finding is consistent with the court's conclusion in *In re Estate of Walton* that, under New York law, it is the right of action that is the property interest, and that interest "is created at the moment of wrongful impact and consequential injuries." *In re Estate of Walton*, 20 A.D.2d at 389, 247 N.Y.S.2d 21. Whether or not Koski would ultimately be able to recover on his claim against CPS is irrelevant to this discussion because the "cause of action," not its proceeds, constitutes the property interest to which the levy attaches. Therefore, consistent with the decisions in *In re Estate of Walton and Simon*, the Court holds that CPS's obligation to Koski was fixed and determinable at the time that CPS was served with

the Notice of Levy. Accordingly, the Court denies Amdursky's and Koski's motion for summary judgment and grants the United States' cross-motion for partial summary judgment with respect to Amdursky's and Koski's second cross-claim.

## C. Applicability of § 6330 to this action

 Pursuant to § 6330, "[n]o levy may be made on any property or right to property of any person unless the Secretary has notified such person in writing of their right to a hearing under this section before such levy is made." 26 U.S.C. § 6330 (Supp.2001). Section 6330 applies to all collection actions initiated after January 18, 1999.

In the present case, the IRS served the Notice of Levy upon CPS on July 10, 1995, well before the effective date of § 6330. Nonetheless, Amdursky and Koski argue that because the actual collection effort based upon the levy was not initiated until October 2000, the notice requirements of § 6330 apply. The Court disagrees.

*Van Es v. Comm'r of Internal Revenue*, 115 T.C. 324, 2000 WL 1520321 (U.S. Tax Ct. 2000), the case upon which Amdursky and Koski rely, does not support their position. In that case, although some collection activities occurred after the effective date of § 6330, others had been initiated and completed before the effective date of § 6330. With respect to the latter actions, the court found that the petitioner was not entitled to the protections of § 6330. *See id.* 115 T.C. at 328, 2000 WL 1520321. *Van Es* is somewhat distinguishable from the present case because here, although the IRS served the Notice of Levy on CPS prior to the effective date of § 6330, the collection activities were not completed prior to that date. Nonethe-

less, when *Van Es* is read in conjunction with the unambiguous language of § 6330, which refers to a notice **before** a levy is made, it is clear that the date that the Notice of Levy is served, not the date upon which the collection action, if any, commences or is completed, determines whether § 6330's requirements apply. Therefore, the Court holds that § 6330 is not applicable to this action. Accordingly, the Court denies Amdursky's and Koski's motion for summary judgment and grants the United States' cross-motion for partial summary judgment with respect to Amdursky's and Koski's fourth cross-claim.

## D. Amdursky's and Koski's claim for damages under § 7433

 Section 7433 provides, in pertinent part, that

[i]f, in connection with any collection of Federal tax with respect to a taxpayer, any officer or employee of the Internal Revenue Service recklessly or intentionally, or by reason of negligence disregards any provision of this title, or any regulation promulgated under this title, such taxpayer may bring a civil action for damages against the United States . . .

26 U.S.C. § 7433(a) (Supp.2001).

This claim requires little discussion.[6] Koski has failed to state a claim under § 7433 because the record is devoid of any evidence that any officer or employee of the IRS disregarded any provision of Title 26 or any regulation promulgated under Title 26 with regard to the levy at issue in this case. Accordingly, the Court denies Amdursky's and Koski's motion for summary judgment and grants the United States's cross-motion for summary judg-

---

6. The Court notes that if such a claim did exist, it would belong to Koski alone because he is the taxpayer. Thus, to the extent that the complaint can be read to include an independent claim on the part of Amdursky under § 7433, this claim must fail.

ment with respect to Amdursky's and Koski's fifth cross-claim.[7]

### E. Amdursky and Koski's claim for attorneys' fees under § 7430

■ For purposes of § 7430, a party is not considered to be a prevailing party, and thus eligible for an award of attorneys' fees, if the United States establishes that its position in the proceeding was substantially justified. *See* 26 U.S.C. § 7430(c)(4)(B)(i) (Supp.2001).

Amdursky and Koski assert that the Court should award them attorneys' fees under § 7430 because, although informed from the outset that its levy was invalid with regard to Amdursky's attorney's lien against the settlement proceeds, the IRS conditioned its recognition of the attorney's lien on Koski's agreement to surrender the balance of the proceeds to the IRS. Moreover, Amdursky and Koski claim that there was no substantial justification for the IRS's actions with regard to this lien, especially when the IRS agreed that the levy did not apply to the attorney's lien but, nonetheless, made no effort to release the levy so that the attorney's lien could be paid.

This claim finds no support in the record. The IRS has consistently maintained that the levy covering Koski's tax liabilities did not attach to Amdursky's attorneys' fees with respect to the lawsuit that generated the settlement proceeds. Moreover,

the United States has disclaimed any interest in the $102,972.93 representing Amdursky's attorneys' fees and reimbursement of costs and disbursements incurred in the underlying lawsuit. Revenue Officer George Checksfield's November 13, 2000 letter to Daniel Arno—the first letter in which the IRS addressed the issue of Amdursky's attorney's lien—demonstrates this point:

> In summary, Area Counsel has advised me that based upon existing case law and statutory interpretation, the Service filed a timely levy which attached to the taxpayer's unliquidated and unsettled tort claim, and that the levy is enforceable against the proceeds **minus the one-third attorney's fee.**

*See* Dkt. No. 46 at 10 (citing United States' Response to Fact Statement, ¶ 21) (emphasis added).

Furthermore, it is clear from the record that the United States did not interfere with the payment of Amdursky's attorneys' fees by conditioning recognition of the lien on an agreement by Koski to surrender the balance of the settlement proceeds to the IRS.[8] In this regard, despite Amdursky's and Koski's argument to the contrary, Mr. Checksfield's November 13, 2000 letter was not an offer of compromise which "expressly made the surrender of Dean Koski's net proceeds a precondition to the payment of the attorney's lien." *See* Dkt. No. 46 at 10. Although the des-

---

7. Alternatively, the United States asserts that the Court does not have jurisdiction over this claim because Koski never filed an administrative claim for damages, which is a prerequisite to filing a suit for damages under § 7433. Koski does not specifically address the issue of administrative exhaustion, although he claims that he repeatedly attempted to obtain an administrative review, due process hearing or appeals review of the issues surrounding the levy. The Court, however, need not determine whether Koski's requests satisfy the exhaustion require-

ment because, as noted, Koski has failed to establish a claim under § 7433.

8. There is also no evidence to support Amdursky's and Koski's claim that the United States unduly delayed in disclaiming any interest in the attorney's lien. Until the United States was provided with information regarding the specifics of Amdursky's agreement with Koski and the amount of the lien, it could not file a disclaimer.

ignation, "Offer of Compromise," appears under the signature line of the letter, the substance of the letter is void of any reference that recognition of Amdursky's attorney's lien was conditioned upon Koski's agreement to surrender the balance of the settlement proceeds to the IRS.

Accordingly, the Court concludes that Amdursky and Koski are not prevailing parties within the meaning of § 7430 and, therefore, are not entitled to attorneys' fees under that statute.

## III. CONCLUSION

After carefully reviewing the file in this matter, the parties' submissions and oral arguments, and for the reasons stated herein, the Court hereby

**ORDERS** that Defendant Amdursky's and Defendant Koski's motion for summary judgment is **DENIED** in its entirety; and the Court further

**ORDERS** that the United States' cross-motion for partial summary judgment is **GRANTED** in its entirety; and the Court further

**ORDERS** that the Clerk of the Court pay the sum of $197,027.07, which is currently held in the Court's Registry, to the United States; and the Court further

**ORDERS** that the Clerk of the Court enter judgment in favor of the United States and close this case.

**IT IS SO ORDERED.**