## BROWN *v.* GEORGIA COTTON GROWERS CO-OPERATIVE ASSOCIATION.

1. Construing together the terms of a contract for sale of cotton to be produced and delivered in the future, the buying association was not allowed a discretion as to whether it would deduct the cost of handling, grading, and marketing. Pursuing the plan specified, the contract price was ascertainable, in view of the Civil Code, § 4128.

2. Section 15 of the co-operative marketing act of 1921 (Ga. L. 1921, pp. 139, 149, Park's Code Supp. 1922, § 2928(aa)), properly construed, authorizes parties contracting in pursuance of the statute to stipulate for the payment of attorney's fees by the member to the association, in the circumstances therein stated. No prior notice of intended suit is requisite to a recovery of such fees in an action for breach of the contract. Civil Code § 4252 is not applicable.

3. On the trial of a suit for specific performance of a contract to deliver cotton to the co-operative marketing association, and for injunctive relief, it was error to strike, as irrelevant, immaterial, and non-defensive, an allegation of the answer that the plaintiff was making no effort whatever to enforce the contracts with many of its members, and was seeking to enforce them against but a few of its members.

4. Error was committed in sustaining grounds of demurrer to other allegations of the answer, as shown in the opinion of the court.

No. 5615. SEPTEMBER 9, 1927.

Equitable petition. Before Judge Perryman. Wilkes superior court. July 16, 1926.

*W. A. Slaton,* for plaintiff in error.

*C. E. Sutton* and *Bryan & Middlebrooks,* contra.

ATKINSON, J. The Georgia Cotton Growers Co-operative Association instituted an action against G. W. Brown, for specific performance of an alleged contract calling for future delivery of cotton, for injunction to prevent the sale of the cotton to others, and for attorney's fees as provided in the contract. The defendant filed a demurrer and an answer. The plaintiff filed a demurrer to the answer. The judge overruled the demurrer to the petition, and sustained demurrers to certain portions of the answer. The trial resulted in a verdict for the plaintiff for "three bales of cotton and fifty dollars as attorney's fees." The defendant's motion for a new trial was overruled, and he excepted. Error was also assigned on exceptions pendente lite to the above-mentioned rulings on demurrer.

Contracts, 13 C. J. p. 525, n. 41.
Pleading, 31 Cyc. p. 49, n. 68.
Sales, 35 Cyc. p. 48, n. 17; p. 96, n. 88.
Specific Performance, 36 Cyc. p. 782, n. 99.

1. In contracts of sale of cotton to be produced in the future, the stipulated purchase-price "must either be definite, or an agreement made by which it can be made certain; if its ascertainment becomes impossible, there is no sale." Civil Code (1910), § 4128; *Deadwyler* v. *Karow,* 131 *Ga.* 227 (62 S. E. 172, 19 L. R. A. (N. S.) 197); *Elberton Hardware Co.* v. *Hawes,* 122 *Ga.* 858 (50 S. E. 964); *Overland Southern Motor Car Co.* v. *Hill,* 145 *Ga.* 785 (89 S. E. 833). The petition in this case alleged that the plaintiff was a non-profit-making co-operative cotton marketing association composed of growers of cotton, and organized for the exclusive benefit of its members with whom it had separate similar contracts; and that the defendant became a member of the association and in September, 1923, entered into a written contract binding himself to "sell and deliver" to plaintiff "all of the cotton produced by or for him or acquired by him as landlord or lessor during the years of 1922, 1923, 1924, 1925, and 1926." A copy of the contract was set out as an exhibit. Paragraphs 6 and 7 of the petition were as follows: "6. The association agrees to resell such cotton, together with cotton of like variety, grade, and staple delivered by other growers under similar contracts, at the best prices obtainable by it under market conditions; and to pay over the net amount received therefrom (less freight, insurance, and interest), as payment in full to the grower and growers named in contracts similar hereto, according to the cotton delivered by each of them, after deducting therefrom, within the discretion of the association, the cost of handling, grading, and marketing such cotton, and of reserves for credits and other general purposes (said reserves not to exceed two per cent. of the gross resale price). The annual surplus from such deductions must be prorated among the growers delivering cotton in that year, on the basis of delivery. 7. The grower agrees that the association may handle, in its discretion, some of the cotton in one way and some in another; but the net proceeds of all cotton of like quality, grade, and staple, less charge, costs, and advances shall be divided ratably among the growers in proportion to their deliveries to each pool, payments to be made from time to time until all the accounts of each pool are settled."

These provisions of the contract must be construed together. Construing them together, it is apparent that the clause, "within

the discretion of the association," is not intended to allow the association to exercise a discretion as to the deduction of the costs of handling, grading, and marketing such cotton; but the discretion referred to is in regard to the power given the association to "handle . . some of the cotton in one way and·some in another." If the provision in the clause just quoted from paragraph 6 allowed the association a discretion as to whether it would deduct the "cost of handling, grading, and marketing cotton," it would make the contract indefinite relating to the price to be paid; but it is expressly provided in section 7 that "the net proceeds of all cotton of like quality, grade, and staple, less charge, costs, and advances, shall be divided ratably among the growers in proportion to their deliveries to each pool." Construing both sections together, the association was not allowed a discretion as to whether it would deduct the cost of handling, grading, and marketing cotton. Pursuing the plan specified, the contract price was ascertainable, and the mere use of the language "within the discretion of the association," as employed in paragraph 6, did not render the contract void on the ground that the price to be paid or the consideration was indefinite.

2. In section 15 of the agricultural co-operative marketing act (Acts 1921, pp. 139, 149) it is provided: "The by-laws and the marketing contract may fix, as liquidated damages, specified sums to be paid by the member or stockholder to the association upon the breach by him of any provision of the marketing contract regarding the sale or delivery or withholding of products; and may further provide that the member will pay all costs, premiums for bonds, expenses and fees, in case any action is brought upon the contract by the association; and any such provisions shall be valid and enforceable in the courts of this State." This provision of the statute relates to·a particular class of subject-matter, and, properly construed, authorizes parties contracting in pursuance of the statute to provide for payment of attorney's fees by the member to the association, in the·circumstances therein stated. The statute makes no reference to the giving of notice to a member prior to the filing of an intended suit, as a condition upon which attorney's fees may be recovered, and no such prior notice is requisite to a recovery of attorney's fees in a suit for such breach of the contract. The statute differs from the Civil Code (1910), § 4252, which denounces

obligations "to pay attorney's fees upon any note or other evidence of indebtedness," and the provisions of that section are inapplicable to this case.

The rulings announced in the preceding notes dispose of the only questions argued in the brief of the attorney for the plaintiff in error, relating to the assignments of error upon the judgment overruling the demurrer to the original petition.

3. In paragraph 7 of the answer it was alleged "that plaintiff is making no effort whatever to enforce its alleged contracts with many of the members of plaintiff's organization, but is seeking to enforce said contracts only against a few of its members." This part of the answer was stricken on special demurrer complaining that it "was immaterial and irrelevant, and sets up no matter in defense of the contract." The court here committed error. The plaintiff sought specific performance of the contract and injunctive relief predicated in part upon allegations contained in paragraph 9 of the petition, as follows: "Failure to perform said agreement on the part of growers and producers, and failure to deliver cotton to plaintiff in accordance to the terms of said agreement, will defeat and destroy the purposes for which plaintiff was formed. It is necessary, in order to carry out said purposes, for plaintiff to control the cotton of all signers of said agreement, and without such control plaintiff can not attain any of the objects for which it was organized. Under the terms of said co-operative marketing act and agreement, no person except a grower of cotton, or such landlord, tenant, lessor, or lessee can become a member of plaintiff; and plaintiff is not permitted by law or by the terms of said agreement to handle the cotton of any person not a member of plaintiff, or to purchase cotton upon the open market. If defendant and other signers of said agreement fail to perform the same, plaintiff will be forced to discontinue its business, and all of plaintiff's members and the entire industry of growing cotton in said State of Georgia will be seriously damaged. The successful operation of plaintiff under said agreement is wholly dependent upon the performance of the terms thereof by all of plaintiff's members." The allegations of the answer that were stricken essentially affected the price that should be paid to each member for his cotton, and were responsive to the above-quoted portion of the original petition.

4. Paragraph 7 of the answer contained the further allegations:

"That the said contract, as executed and performed by plaintiff, is not fair, just, and reasonable between the parties thereto, but on the contrary plaintiff in the performance of said contracts settles with some of its members at one price or basis, and with other members at another price or basis, not according to the actual grades and values of the cotton deposited by said members, but at arbitrary and unfair prices fixed and determined by plaintiff, its officers and agents, on such basis as they may determine. Further answering said paragraphs, this defendant says that the performance of said contract by plaintiff is unfair, unjust, and unreasonable as to this defendant, because plaintiff in its operations charged against this defendant and the other members of plaintiff, not only the item 'interest paid, $121,374.11,' the item 'insurance, $39,311.39,' and the item 'compress and warehouse charges, $91,-311.39,' for the year beginning August 16, 1923, and ending July 31, 1924, but also charged against plaintiff a proportion of an item, 'other expenses, net, $276,596.82,' which said item of expenses defendant says is unexplained to this defendant or to the other members of plaintiff's organization. Said item of expense represented approximately $4.00 per bale for each bale of cotton handled by plaintiff, was unjust, unreasonable, and improper; and although the statute under which plaintiff claims to have been chartered requires that it shall file with the Secretary of State of the State of Georgia a detailed account of its expenses, plaintiff has made no such statement and has filed no such statement with the Secretary of State or any other officer. This defendant says that the charging of said item 'other expenses, net, $276,596.82,' or any portion thereof against this defendant or any other member of plaintiff's organization, was and is a fraud, because the same was a misappropriation of the funds belonging to the members of said association."

The answer was amended by adding paragraph 9, which alleged the following: "This defendant further alleges that the contract sued on in this case creates between the plaintiff and this defendant the novation [relation?] of principal and agent, and constitutes plaintiff the agent of this defendant; and that in the cotton season 1923-1924 this defendant did ship to plaintiff three bales of cotton, weighing a total of 1572 lbs., which said cotton was handled, sold, and disposed of by plaintiff at and prior to the 18th day of

August, 1924. In making settlement for this defendant's cotton so shipped, handled, and disposed of, plaintiff deducted from the proceeds of said cotton the sum of $24.37, alleged to cover the item 'Association Expense,' and the further sum of $4.65, alleged to be '1% reserve credited to your account as per contract,' making a total of deductions of $29.02 from the proceeds of said 1572 lbs. of cotton, or approximately $10.00 per bale. Of said deductions this defendant alleges that the sum of $11.64, was deducted by plaintiff to cover the following items included in its statement of income and deductions for the year or season 1923-1924, to wit:

'Interest paid................$121,374.11 or $.0036¢ per lb.

Insurance...................    39,311.39 "   .0011   "   "

Compress & Warehouse Charges.  91,311.39 "   .0027   "   "'

"This defendant alleges that the sum of $12.73, included in said deduction of $24.37 made by plaintiff from this defendant's cotton sales, was a proportion of certain expenses carried on plaintiff's books under an item contained in the statement of income and deductions made by plaintiff for the period 'Aug. 16, 1923, to July 31, 1924,' as follows, to wit:

'Other expenses, net..........$276,596.82, or $.0081 per lb.'

This defendant alleges that said deduction of $12.73, from the proceeds of the sales of this defendant's cotton, was included in the total of said sum of $276,596.82, and that said sum carried on the books of plaintiff under said item of 'other expenses, net,' was and is, as to this defendant and as to the members of plaintiff association, illegal, improper, and fraudulent, for that said item represents and is the payment by plaintiff of sums of money belonging to the members of plaintiff, for salaries, wages, rents, traveling expenses, and other expenditures to this defendant unknown, to persons and for services alleged to have been performed which were not performed, and at rates so much greater than was fair and reasonable and proper that such payments represent a fraud on this defendant and the other members of plaintiff association; and that because of the fraud of plaintiff association, its officers and agents, in making such disbursements, any contract existing between plaintiff and this defendant is void and of no effect. Defendant further alleges that plaintiff association, its officers and agents, undertake to justify the expenditures included in said item, 'other expenses, net,' under a clause in the contract sued on, reading as follows,

to wit: 'The association agrees to resell such cotton, together with cotton of like variety, grade, and staple delivered by other growers under similar contracts, at the best prices obtainable by it under market conditions, and to pay over the net amount received therefrom (less freight, insurance, and interest) as payment in full to the grower or growers named in contracts similar hereto, according to the cotton delivered by each of them, after deducting therefrom, *within the discretion of the Association,* the cost of handling, grading, and marketing such cotton.' Which said language in said contract this defendant alleges means and provides only for an honest, efficient effort on the part of plaintiff association to handle the cotton deposited with them at reasonable and proper charges and expenses; and this defendant alleges that the items charged into said account are not reasonable and proper charges, and do not represent honest and efficient management of the business of said association, and the disbursements made from said account and charged thereto were fraudulent, and represented an improper disbursement of the funds of this defendant and the other members of said association; and by reason of the fraud of plaintiff association in making such disbursements, plaintiff association violated its contract, and the violation of its contract by such fraudulent disbursements released this defendant from any liability to plaintiff association."

The plaintiff interposed special demurrers to said paragraphs 7 and 9 of the answer, as follows: "3. Plaintiffs demur specially to that part of paragraph seven which states, 'Further answering said paragraphs this defendant says that the said contract as executed and performed by the plaintiff is not fair, just, and reasonable between the parties thereto, but on the contrary plaintiff in the performance of said contracts settles with some of its members at one price or basis and with other members at another price or basis, not according to the actual grades and values of the cotton deposited by said members, but at arbitrary and unfair prices fixed and determined by plaintiff, its officers and agents, on such a basis as they may determine.' That this statement is a conclusion of the pleader and is based on no facts giving a definite statement how or wherein the performance of the contract is not fair and reasonable, nor wherein the defendant is discriminated against in the settlement for his cotton. 4. Plaintiff demurs to the balance

of said paragraph seven of the original answer, beginning, 'Further·
answering said paragraphs this defendant says that the perform-
ance of said contract by plaintiff is unfair, unjust, and unreason-
able as to this defendant, because plaintiff in its operations charged
against this defendant and the other members of plaintiff not only
the item 'interest paid' $121,374.11, the item 'insurance $39,-
311.39,' and the item 'compress and warehouse charges $91,311.39'
for the year beginning August 16th, 1923, and ending July 31st,
1924, but also charged against defendant a proportion of another
item 'other expenses net, $276,596.82,' which said items of ex-
penses defendant says is unexplained to this defendant or to the
members of plaintiff organization,' and 'said item of expense repre-
sented approximately $4.00 per bale for each bale of cotton handled
by plaintiff, was unjust, unreasonable, and improper.' That said
paragraph and the part thereof quoted is too indefinite on which
to base any matter of defense, and is immaterial and irrelevant, and
fails to show how or wherein said charges were improper and un-
just with the particularity required by law, or wherein said charges
were unreasonable.  5.  Plaintiff demurs to that part of said para-
graph seven which alleges that the charging of said item of $276,-
596.82 or a portion thereof to defendant was a fraud and a mis-
appropriation of defendant's funds, because said allegation is too
vague and indefinite to point out wherein a fraud or misappropria-
tion of funds was committed.  6.  Plaintiffs demur to paragraph
nine of the amended answer as filed, on the ground that the same
is indefinite, immaterial, and irrelevant and fails to set forth with
sufficient particularity the matters therein pleaded, in that said
paragraph fails to show how or wherein the charges set out in
said amendment were 'improper and fraudulent and illegal,' or
fails to set forth with sufficient particularity what services, wages,
rents, traveling expenses were not incurred or performed, nor
wherein said rates were unfair and unreasonable, nor wherein the
payment of said charges was a fraud, and how said payments
rendered the contract with defendant void.  Plaintiff says that
said paragraph fails to allege in what manner said charges were
not reasonable and proper charges, nor wherein the management
of said business was not honest and efficient, nor wherein the dis-
bursements as made by plaintiffs were improper and fraudulent
as violating the contract.  Plaintiffs further demur to said para-

graph nine of the amendment as filed, because said paragraph alleges that 'the plaintiff association violated its contract, and the violation of its contract by such fraudulent disbursements released this defendant from any liability to plaintiff association; on the ground that said paragraph is too indefinite to raise any issue of law or fact, in that the same does not specify in what manner its contract with defendant was violated, nor wherein said acts complained of tended to release the defendant from his contract, or prevented him from performing the same on his part.' 7. Plaintiff demurs to the concluding lines of said paragraph seeking to recover the sum of $12.73 misappropriated by plaintiff, on the ground that no facts are pleaded with sufficient certainty to show any indebtedness by plaintiff to defendant arising either from contract or a breach of same."

These grounds of special demurrer to the answer were sustained. The court thereby committed error. The defendant was not required to set out his evidence. In substance the answer alleged, as a reason for refusing to perform the contract, that the plaintiff had committed a fraud, in that in making its accounts after correctly charging for interest, insurance, compress and warehouse charges, amounting to $251,996.89, it made another charge under the general head "other expenses, net," the sum of $276,596.82, which were "for services alleged to have been performed which were not performed." In the light of these specific allegations, the allegations that were stricken, construed together and in connection with the whole of paragraphs seven and nine of the answer, were not mere conclusions of the pleader or vague, but sufficiently alleged fraud showing such violation of the contract as would authorize the defendant to repudiate the contract and recover the item of $12.73 alleged to have been improperly charged against him.

5. The error in striking portions of the answer, as indicated in the preceding paragraphs, rendered all further proceedings in the case nugatory; and no ruling will be made on assignments of error upon the judgment overruling the defendant's motion for a new trial, which complains of a refusal to allow certain questions to be propounded to a witness for the plaintiff while on cross-examination, and of an excerpt from the charge of the court.

*Judgment reversed. All the Justices concur.*

RUSSELL, C. J., concurs in the result.