NEITH CO-OPERATIVE DAIRY PRODUCTS ASSOCIATION, Plaintiff, vs. NATIONAL CHEESE PRODUCERS' FEDERATION, Defendant. [Two appeals.]

*November 8, 1934—February 5, 1935.*

For the plaintiff there were briefs by *Hougen & Brady* of Manitowoc, and oral argument by *A. L. Hougen.*

For the defendant there were briefs by *Gilbert, Ela, Heilman & Raeder* of Madison, and oral argument by *Emerson Ela.*

The following opinion was filed December 4, 1934:

WICKHEM, J. Some confusion exists in this case because of the manner of disposition of the issues, but the difficulty is more apparent than real. The court found that plaintiff sold cheese of the value of $818.28 to defendant, and that this had not been paid for. That constitutes a finding that plaintiff is entitled to recover on his cause of action. The court further found that during the previous year there had been an overpayment by defendant in a sum at least as great as the demand of plaintiff's complaint, which amounts to a finding that defendant was entitled to recover on the counter-claim. The court further found that it could not ascertain, or that it had not been proven to its satisfaction, that the amount due on the counter-claim exceeded that due on the cause of action. Therefore, the court balanced the recov-

eries, found each party entitled to precisely the same sum, and dismissed both complaint and counter-claim. There is no procedural barrier, therefore, to a disposition of this case upon its merits.

Plaintiff is a corporation, organized under ch. 185, of the Wisconsin Statutes, as a co-operative. Defendant is likewise organized under ch. 185, and operates as a co-operative association. Plaintiff·has been a 'member of the defendant corporation since 1914. Between August 5, 1931, and September 2, 1931, plaintiff, pursuant to an agreement between the parties, delivered cheese to defendant of the estimated value of $4,115.86, for which it was paid the sum of $3,297.58. This would leave a balance due plaintiff of $818.28. Defendant claims that during the calendar year 1930, plaintiff delivered cheese to defendant, on which defendant overpaid the plaintiff in the sum of $805.20. This overpayment is claimed to exist because plaintiff was paid a greater sum than the resale price of the cheese, less the cost and expense of doing business as provided by the contract between the parties. Defendant further counter-claimed for overpayments in 1931, in the amount of $13.08, but defendant's proofs are claimed to show total overpayments to plaintiff of $885.98. Defendant therefore claims that, by the undisputed proof, it is entitled to a judgment of $67.70.

The appeal involves a construction of the contract between the parties. The defendant has adopted a uniform form of contract, and while there was no written contract between this plaintiff and defendant, it is conceded that the rights of the parties are to be determined as though this contract had been formally executed, and that the contract evidences the agreement between the parties. The contract is denominated a "Contract of Purchase and Sale." The agreement on the part of any Local joined to the federation under such a contract is that it will sell to the federation all cheese produced by or for such Local of the styles which the federation regu-

larly handles. The federation on its part agrees that it will "buy all the cheese produced by or for the Local of the styles which the federation regularly handles; and that the purchase-price which it will pay for the cheese shall be the average price which it receives upon a resale minus a uniform charge to approximately cover the expense of marketing; average price to be based upon the federation's total monthly receipts from the sale of cheese of the same type and quality; the uniform charge to be determined in amount by the board of directors of the federation." Paragraph 8. of the agreement provides that payment shall be made on the twentieth day of each month for cheese shipped by the Local during the month before the month which precedes the date of payment. For example, cheese shipped in January is to be paid for on March 20th, and cheese shipped in February is to be paid for on April 20th. It is agreed by the parties that the board of directors of the federation, in its discretion, may advance, within a reasonable time after delivery to the federation, an amount to be determined by such board of directors and pay the remainder, if any, of the purchase-price on the date of payment. There is a provision that the board of directors, in its discretion, may retain a sum not to exceed one-half cent per pound, to accumulate a fund for the use of the federation in its normal activities.

It is the contention of the defendant that, being a co-operative organized not for private profit but for the benefit of its members, the federation must be understood to contract only to pay the actual resale price less expenses. In other words, that it agrees ultimately to pay only such a sum as represents the difference between the resale price and the federation expenses; that the payments provided for on the 20th of the second month after delivery are merely advances, and that in case of overpayments the association may recover. Plaintiff, on the other hand, contends that this is an ordinary contract of purchase and sale; that the payments to be made

on the second month after delivery are final payments; that the only payments which are advances are those so denominated in the contract by the clause which permits the executive board to make advances. The contract clearly settles this controversy adversely to defendant. It is a contract of purchase and sale. The Local, in this case the plaintiff, agrees to sell all of its product to the federation, and the federation agrees to pay for it. The dates of payment are specifically set forth in the contract, and they are dates of payment and not advances. It will be noted that the federation does not pay for the cheese until at least fifty days after delivery, and we cannot resist the conclusion that this is to enable the board of directors to safely fix a final price. The contract appears to contemplate that the board of directors shall establish a uniform charge, and some reliance is had upon this clause by the defendant. Defendant contends that what the board does when it fixes the purchase-price to be paid on the 20th of the month is to approximate the selling price and approximate the expenses; that at the end of the year, upon a recheck, it may modify this price in either direction. If there is a surplus it may declare a dividend and distribute the surplus. If there is a deficit it may reclaim the overpayments. This is not a fair construction of the contract. The contract contemplates that the board of directors of the federation shall set up a uniform charge; that is, a charge which may be uniformly applied to any shipment or delivery of cheese, and deducted from the average resale price. It is true that if the average price as set by the board of directors has been so conservative as to result in a surplus at the end of the year, it has been the practice to distribute this surplus to the members. This practice does not affect the foregoing conclusions. The distributees receive the surplus because they are members and not because they are vendors. Defendant cites a number of cases to support its position, but these are all cases

where, by the terms of the contract, the payments were held to be advances. *California Raisin Growers' Asso. v. Abbott,* 160 Cal. 601, 117 Pac. 767; *California Pear Growers' Asso. v. Herspring,* 60 Cal. App. 503, 213 Pac. 518; *California Bean Growers' Asso. v. Williams,* 82 Cal. App. 434, 255 Pac. 751; *Brown v. Georgia Cotton Growers' Co-op. Asso.* 164 Ga. 712, 139 S. E. 417; *Lake Charles Rice Milling Co. v. Pacific Rice Growers' Asso.* (C. C. A.) 295 Fed. 785. If the payments on the twentieth of each month were held to be advances, the cases would be applicable and would support defendant's contentions, but, in view of the construction we put upon the contract, they are immaterial.

This results in the conclusion that the judgment of the trial court dismissing the counter-claim must be affirmed; that its judgment dismissing plaintiff's complaint must be reversed, with directions to grant judgment as demanded by the complaint, plaintiff to have costs in this court

*By the Court.*—Upon plaintiff's appeal, judgment reversed, and cause remanded with directions to enter judgment for plaintiff; upon defendant's appeal, judgment affirmed.

A motion for a rehearing was denied, with $25 costs, on February 5, 1935.