**Robert J. GESSERT and The Gessert Group, Inc., Plaintiffs,**

v.

**UNITED STATES of America, Defendant.**

No. 06–C–448.

United States District Court, E.D. Wisconsin.

March 31, 2009.

Douglas H. Frazer, Dewitt Ross & Stevens SC, Brookfield, WI, for Plaintiffs.

Jacqueline C. Brown, United States Department of Justice, Washington, DC, Lisa T. Warwick, United States Department of Justice, Office of the U.S. Attorney, Milwaukee, WI, for Defendant.

### DECISION AND ORDER

LYNN ADELMAN, District Judge.

■■■■ Plaintiffs Robert J. Gessert (Gessert) and a corporation that he controlled, the Gessert Group ("Corporation"), bring this suit against defendant United States under 26 U.S.C. § 7433, seeking damages based on the alleged unlawful collection practices of an Internal Revenue Service ("IRS") revenue officer (Count I), and under 26 U.S.C. § 7422 seeking refunds of taxes allegedly erroneously assessed or collected from the Corporation (Count II) and Gessert (Count III). Defendant counterclaims seeking to reduce plaintiffs' unpaid tax liabilities to judgment. Before me now are the parties' motions for summary judgment.[1]

---

1. Defendant also moves to strike plaintiffs' Cross–Motion and the related brief, exhibits and declarations for untimeliness. However, I conclude that plaintiffs complied with the Federal Rules of Civil Procedure and the Local Rules, and that their summary judgment filings are timely. Defendant also seeks to strike specific exhibits and declarations based on objections to their admissibility. First, defendant asks me to strike several declarations of third parties attesting to the truthfulness of the IRS agent who interacted with plaintiffs, claiming that they are inadmissible character evidence under Fed.R.Evid. 404. Plaintiffs assert that these declarations are opinions of the agent's truthfulness and admissible under Fed.R.Evid. 608. Regardless of whether they are admissible, I do not rely on any statements by the IRS agent that defendant offered in support of its motion, and therefore have no reason to consider the agent's credibility. Defendant's motion also seeks to strike paragraph three of Gessert's declaration, in which Gessert attests that the IRS agent assigned to plaintiffs' case did not attempt to contact him during a certain time frame, on the ground that it asserts a matter about which Gessert had no personal knowledge; however, I conclude that Gessert had some personal knowledge about whether the agent was trying to contact him—of course, tempered by the possibility that the agent's attempts to contact him were unsuccessful. Defendant also seeks to strike several summary exhibits offered by plaintiffs on the ground that they lack sufficient foundation (Exhibits 8, 14, 15, and 18). I agree. Plaintiffs offer no testimony through affidavit or

## I. SUMMARY JUDGMENT STANDARD

■ Summary judgment is required "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The mere existence of some factual dispute does not defeat a summary judgment motion; "the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). For a dispute to be genuine, the evidence must be such that a "reasonable jury could return a verdict for the nonmoving party." *Id.* For the fact to be material, it must relate to a dispute that "might affect the outcome of the suit." *Id.* In evaluating a motion for summary judgment, the court must draw all inferences in a light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). However, it is "not required to draw every conceivable inference from the record-only those inferences that are reasonable." *Bank Leumi Le–Israel, B.M. v. Lee,* 928 F.2d 232, 236 (7th Cir.1991). The fact that both parties have moved for summary judgment, and thus both parties simultaneously are arguing that there is no genuine issue of fact, does not establish that a trial is unnecessary or empower me to enter judgment as I see fit. *See* 10A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 2720 at 327–28 (3d ed.1998). I may grant summary judgment only if one of the moving parties is entitled to judgment as a matter of law on the basis of the material facts not in dispute. *See Mitchell v. McCarty,* 239 F.2d 721, 723 (7th Cir.1957).

## II. BACKGROUND

In 1989 Gessert organized the Corporation and served as its Chief Executive Officer (CEO) at all times from January 1, 2000 to January 31, 2005.[2] Between 2000 and 2004, the Corporation employed up to thirty employees and an accountant, Vytautas Jonynas ("Jonynas"), served as its Chief Financial Officer (CFO). At various times between January 1, 2000 and January 31, 2005, the Corporation failed to pay federal employment taxes. The IRS assigned revenue officer Lillie Johnson to collect the Corporation's unpaid taxes.

The Corporation's unpaid employment taxes included Federal Income Contribution Act (FICA) taxes withheld from employees' wages, the employer's FICA tax contribution, and income taxes withheld from employees' wages under 26 U.S.C. § 3402(a). The FICA and income taxes withheld from employees' wages are designated as the "trust-fund" portion of employment taxes. *See* 26 U.S.C. § 7512; 26 C.F.R. § 301.7512–1. Because the Corporation failed to pay trust-fund taxes, the IRS assessed a Trust Fund Recovery Penalty Assessment against Gessert on different occasions pursuant to 26 U.S.C. §§ 6671 and 6672. *See United States v. Schroeder,* 900 F.2d 1144, 1146 (7th Cir. 1990) ("Section 6672, in effect, gives the United States the ability to collect wayward trust fund taxes not only from an erring business, but also from those individuals responsible for guarding against such an error."). Thus, both Gessert and

---

otherwise properly authenticating these documents or providing the proper foundation for the legal conclusions and factual assertions set forth in them. *See Judson Atkinson Can-* *dies, Inc. v. Latini–Hohberger Dhimantec,* 529 F.3d 371, 382 (7th Cir.2008).

**2.** The Corporation ceased operating at the end of 2004.

the Corporation were liable for the unpaid trust-fund taxes.

During the relevant time period, the Corporation made several voluntary payments to the IRS. When a taxpayer makes a voluntary payment, the taxpayer can designate to which liabilities the payment should apply. *Muntwyler v. United States,* 703 F.2d 1030, 1032 (7th Cir.1983). When a taxpayer makes no designation, the IRS applies the payment in its best interest. The Corporation designated some of its payments to the unpaid trust-fund taxes and the IRS so applied them, thereby decreasing both the Corporation's and Gessert's liability. The IRS did not apply undesignated payments to the trust-fund liability, thus such payments did not reduce Gessert's liability but only the Corporation's. The IRS also levied several financial institutions where the Corporation had accounts, and in 2004 and 2005 it levied DePuy Orthopaedics, Inc. ("DePuy") and Pfizer, Inc. ("Pfizer"), both of which owed money to the Corporation. The IRS may apply levied funds in its best interest.

On July 1, 2005, Gessert filed an administrative claim for a tax refund for the second, third, and fourth quarters of 2002, and all quarters of 2003 and 2004, and the Corporation filed a refund claim for the first and second quarters of 2001. Gessert and the Corporation filed administrative damages claims for all quarters from the third quarter of 2000 to the fourth quarter of 2004.

I will state additional facts in the course of the decision.

## III. DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

### A. Jurisdiction

Defendant first argues that I lack jurisdiction over plaintiffs' refund claims specified in paragraphs 6, 7, 9 and 11 of the Amended Complaint because plaintiffs failed to timely file an administrative claim as required by 26 U.S.C. § 7422(a). "A timely sufficient claim is a jurisdictional prerequisite to a refund suit." *Goulding v. United States,* 929 F.2d 329, 331 (7th Cir.1991). Under 26 U.S.C. § 6511(a), a taxpayer must file such a claim two years after paying the tax or three years from filing the return, whichever is later. Neither Gessert nor the Corporation filed an administrative refund claim until July 1, 2005. The IRS applied the sums referred to in paragraphs 6, 7, 9 and 11 of the Amended Complaint to tax liabilities assessed for quarters in 2000, 2001, and 2002, and plaintiffs filed tax returns for such quarters on or before June 10, 2002. Thus, plaintiffs did not file the July 1, 2005 administrative claim within three years of filing the return. Further, the tax payments that are the subject of paragraphs 6, 7, 9 and 11 occurred before May 30, 2003, more than two years before July 1, 2005. Thus, plaintiff's administrative refund claim filed on July 1, 2005, was untimely as to the claims in paragraphs 6, 7, 9 and 11. Therefore, I lack jurisdiction to consider such refund claims.

Plaintiffs' disagree with the above conclusion but do not clearly explain why. They seem to contend that because they are not challenging the validity of the initial assessments, but only the correctness of various current balances of their tax liabilities, they did not have to file an administrative claim. Plaintiffs cite no legal authority for this contention or for their assertion that I have jurisdiction over the refund claims at issue. Therefore, their argument fails.

### B. 2004 DePuy and Pfizer Levies

Plaintiffs seek a refund of the money that the IRS obtained by levying DePuy and Pfizer.[3] They assert that such

---

**3.** Plaintiffs' July 1, 2005 administrative refund claim was timely as to these claims.

money was wrongly levied because it was not owed to the Corporation. This claim fails on several counts. First, plaintiffs lack standing to challenge the levies at issue. This is so because 26 U.S.C. § 7426 authorizes suits against the United States for wrongful levies by persons "other than the person against whom is assessed the tax out of which such levy arose ..." Plaintiffs are the persons against whom the tax out of which the levy arose is assessed. *See Allied/Royal Parking L.P. v. United States,* 166 F.3d 1000, 1004 (9th Cir.1999). Thus, plaintiffs may not challenge the DePuy and Pfizer levies.

 Even if plaintiffs have standing, their claims would fail because based on their evidence, no reasonable factfinder could conclude that the levies were wrongful. A levy attaches only to property possessed or obligations existing at the time of the levy. 26 C.F.R. § 301.6331–1(a)(1). When determining whether a levy attaches to property, a court places itself in the position of the taxpayer at the time of the levy: the levy attaches to whatever property rights the taxpayer has with respect to the property in question. *United States v. Gen'l Motors Corp.,* 929 F.2d 249, 252 (6th Cir.1991). Obligations exist when the liability of the obligor is fixed and determinable, although the right to receive payment may be deferred. 26 C.F.R. § 301.6331–1(a)(1). Thus, while a payment contingent upon future performance is not an existing right to which a levy would attach, *see United States v. Long Island Drug Co.,* 115 F.2d 983, 986 (2d Cir.1940), an IRS levy can reach a vested, accrued right to receive money in the future, *see United States v. Morey,* 821 F.Supp. 1438, 1440 (W.D.Okla.1993). Whether a taxpayer has property or a right to property is a question of state law. *Aquilino v. United States,* 363 U.S. 509, 513, 80 S.Ct. 1277, 4 L.Ed.2d 1365 (1960).

Plaintiffs contend that the IRS wrongfully levied DePuy and Pfizer arguing that the Corporation had not yet performed the services they required and that payment was contingent on such performance. Plaintiffs further contend that any money that DePuy and Pfizer paid to the Corporation prior to performance was an advance which the Corporation would have had to return if it did not perform the required services.

## 1. DePuy

 The IRS levied DePuy on April 30, 2004, and on July 15, 2004. The Corporation invoiced DePuy on April 19, 2004, for $9,550.00, on May 27, 2004, for $100,000.00, on June 7, 2004, for $6,500.00, and on June 10, 2004 for $5,242.50. Pursuant to the IRS levy, DePuy remitted the above amounts equaling $121,292.50. Plaintiffs argue that the above amounts were merely advances. Wisconsin law distinguishes between advances contingent on future performance, and payments due prior to performance pursuant to the terms of a contract. *See Neith Coop. Dairy Prod. Ass'n v. Nat'l Cheese Producers' Fed'n,* 217 Wis. 202, 257 N.W. 624, 625–26 (1934). In determining whether a payment is an advance, courts look to the terms of the contract between the parties. *Id.* at 626 ("Defendant cites a number of cases to support its position, but these are all cases where, by the terms of the contract, the payments were held to be advances.").

 In the present case, no reasonable factfinder could conclude that the invoiced amounts were advances. The relevant contract provides that one-third of the total estimate will be due at the beginning of the individual project. (Pls.' Cross–Mot. for Summ. J., Ex. 5 ¶ 1.) The total estimate was $300,000; thus, the May 27, 2004, invoice for $100,000 was for the initial one-third payment. Further, the con-

tract states that invoice payments are due upon receipt. (*Id.*) Nothing in the contract suggests that the invoiced amounts were advances or that the Corporation had to return money not earned through actual performance. On the contrary, it states that in the event of termination of the agreement, for projects billed on a progress basis, the Corporation did *not* have to return unused funds, but instead had to credit DePuy.[4] (*Id.* ¶ 2.) Thus, plaintiffs fail to establish that the invoiced amounts described above were advances; rather, the evidence indicates that pursuant to the terms of the contract between the Corporation and DePuy, they were fixed and determinable obligations due and owing at the time of the invoices, and therefore were properly subject to the July 15, 2004 levy.

### 2. Pfizer

■ The IRS issued a levy to Pfizer for money due and owing the Corporation on April 30, 2004. As of that date, the Corporation had sent invoices to Pfizer totaling $13,253.00. On August 4, 2004, the Corporation sent an invoice to Pfizer in the amount of $66,817.00. On September 16, 2004, the Corporation sent an invoice to Pfizer in the amount of $16,704.00. On October 21, 2004, Pfizer remitted $96,774.00 to the IRS, comprising the above invoiced amounts.

Plaintiffs assert that Pfizer improperly remitted the amounts invoiced after April 30, 2004 ($66,817.00 and $16,704.00) because the Corporation's right to such amounts hadn't yet vested on April 30, 2004. However, they present no evidence from which a reasonable factfinder could reach this conclusion. Their argument is

that paragraph two of the letter agreement between Pfizer and the Corporation (*Id.*, Ex. 16.), requires Pfizer to pay for services as provided. Even assuming that the existence of such a requirement would support plaintiffs' argument, paragraph two contains no such requirement. It merely provides that the terms of compensation are to be set in individual Project Authorizations. Thus, in order to enable a reasonable factfinder to conclude that the IRS wrongfully levied upon Pfizer, plaintiffs would have to find and present support for their position in the relevant Project Authorizations. However, they do not do so.

Thus, plaintiffs' refund claims based on the IRS levies of DePuy and Pfizer fail.

### C. Claims under 26 U.S.C. § 7433

Section 7433 allows a taxpayer to sue the United States for economic damage caused by an IRS employee's negligent, reckless or intentional disregard of the Internal Revenue Code ("I.R.C.") and the regulations promulgated thereunder in connection with the collection of a federal tax. The Corporation contends that IRS Agent Johnson violated 26 U.S.C. §§ 6304(b), 6331, 7206, and 7214, and Treasury Regulation 801.3(b), and caused it to suffer economic damage.

### 1. § 6304(b)

■ Section 6304(b) prohibits an IRS employee from engaging in conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of any unpaid tax. Such conduct includes:

---

**4.** Gessert and another individual submit affidavits contradicting this provision of the contract. However, if a contract is unambiguous, a court's interpretation of it ends with the four corners of the contract, without consideration of extrinsic evidence. *Huml v. Vlaz-* *ny*, 293 Wis.2d 169, 197, 716 N.W.2d 807 (2006). Moreover, the contract states that it contains the entire understanding of the parties and that no modification will be effective unless made in writing and signed. Plaintiffs present no evidence of a written modification.

(1) The use or threat of use of violence or other criminal means to harm the physical person, reputation, or property of any person.

(2) The use of obscene or profane language or language the natural consequence of which is to abuse the hearer or reader.

(3) Causing a telephone to ring or engaging any person in telephone conversation repeatedly or continuously with intent to annoy, abuse, or harass any person at the called number.

(4) Except as provided under rules similar to the rules in section 804 of the Fair Debt Collection Practices Act (15 U.S.C. 1692b), the placement of telephone calls without meaningful disclosure of the caller's identity.

The Corporation asserts that Johnson was "aggressive" and "abrupt," and that she acted unreasonably by demanding large payments, that she "threatened" Jonynas with a trust fund penalty investigation unless he made payments reducing the Corporation's tax liabilities and initiated such an investigation[5]; that she threatened to take action against Jonynas for interfering with the collection process; and that in one conversation with Gessert and Jonynas she became upset and raised her voice. The Corporation also asserts that Johnson called DePuy and inquired about funds not subject to levy, that she threatened a DePuy employee with legal action if he did not remit levied funds, that she did not understand basic business practices and that she was ignorant of the law.

Based on the evidence that the Corporation presents with respect to Johnson's conduct, no reasonable factfinder could conclude that Johnson violated § 6304(b). The Corporation establishes no more than that Johnson was aggressive and persistent in her efforts to collect taxes. However, the evidence falls far short of showing that her conduct was harassing, oppressive or abusive within § 6304(b). She did not threaten violence, she committed no criminal acts, she did not continuously place harassing phone calls. She had a right to demand large payments from the Corporation because it owed a large amount to defendant. With respect to her so-called "threats" of legal action against Gessert or Jonynas, the record does not indicate that she said anything baseless and unreasonable. Gessert clearly was personally liable for some of the unpaid taxes and it was reasonable for Johnson to believe that Jonynas was also in that he was responsible for the Corporation's finances. Telling Gessert and Jonynas that they could personally be subject to enforcement does not amount to harassment. Nor is there a genuine issue of material fact that Johnson harassed, oppressed or abused DePuy or Pfizer employees. DePuy employee, Monte Moore states only that Johnson contacted him once to ask about money DePuy owed to the Corporation and had not remitted to the IRS. (Pls.' Cross–Mot. for Summ. J., Ex. 7 at 32–34.) There is no evidence that Johnson knew the money in question was not subject to the levy. Nor does the record indicate that Johnson baselessly threatened Moore with legal action. Johnson's notes indicate only that she explained to Moore the possible consequences of failing to honor a levy. (*Id.,* Ex. 4 at 72.) The Corporation's evidence that Johnson engaged in harassment in connection with Pfizer is even weaker. The Corporation presents no evidence supporting its alle-

---

**5.** The IRS ultimately determined that Jonynas was not a responsible officer against whom a trust fund penalty could be assessed.

gations of threatening or extortionate behavior.

## 2. § 6331

■ The Corporation also contends that Johnson violated § 6331(k) by issuing levies while an installment agreement was pending or soon after one had been rejected. Section 6331(k) bars the IRS from issuing a levy,

> (A) during the period that an offer ... for an installment agreement ... is pending with the Secretary;
>
> (B) if such offer is rejected by the Secretary, during the 30 days thereafter (and, if an appeal of such rejection is filed within such 30 days, during the period that such appeal is pending);
>
> (C) during the period that such an installment agreement ... is in effect; and
>
> (D) if such agreement is terminated by the Secretary, during the 30 days thereafter (and, if an appeal of such termination is filed within such 30 days, during the period that such appeal is pending).

The statute does not make clear when an installment agreement is "pending." One treatise notes

> [f]or purposes of the prohibition of levy action during these periods, "pending" is the key term. A proposed installment payment agreement becomes pending when it is accepted for processing, and remains pending until the Service accepts the proposal, notifies the taxpayer that the proposal has been rejected, or the taxpayer withdraws the proposal. Just when a proposed installment payment agreement is accepted for processing (and therefore is pending, thereby suspending collection action) is left curiously vague.... A proposed installment agreement, it seems, is accepted for processing when it is received before a Tax Division referral, contains sufficient in-

formation to permit the Service to decide whether the proposal is acceptable, and the Service has not returned the offer.

Michael I. Saltzman, *IRS Practice and Procedure* ¶ 15.06[1] (Rev.2d Ed.2005).

Additionally, the Internal Revenue Manual states that for an installment agreement to be considered "pending" a taxpayer must provide: 1) information sufficient to identify the taxpayer, generally the taxpayer's name and identification number; 2) identification of the tax liability to be covered by the agreement; and 3) a proposal of a monthly or other periodic payment of a specific amount. *Internal Revenue Manual* § 5.14.1.3(4). *See also U.S. v. Fry*, Civil Action No. 05–5300, 2007 WL 1696015, at *2 (E.D.Pa. Apr.02, 2007). The Manual further makes clear that a request for an installment agreement alone does not cause an agreement to be pending; rather, the request must be accepted for processing. *Internal Revenue Manual* § 5.14.1.3(4). Further, a request for an agreement by a taxpayer who has previously defaulted on an installment agreement will not be considered "pending." *Id.* § 5.14.3.2 (stating that if a taxpayer requests an installment agreement after a default of a prior agreement the new agreement request will not result in identification of a "pending" agreement if: the ability to pay has not changed since default of the prior agreement; or the taxpayer has a history of non-compliance with Federal Tax Deposit requirements, ES payment requirements or proper payroll withholding, or of not filing tax returns when due.).

Applying the foregoing principles to the evidence, I conclude that no reasonable factfinder could conclude that Johnson violated § 6331(k). Relying on Johnson's case history notes, the Corporation states that it sought a payment plan on Novem-

ber 7, 2002 and that the IRS levied one of its bank accounts on December 6, 2002. Johnson's notes indicate that when Gessert requested a payment plan on November 7, she advised him that she could not evaluate the plan until he provided current corporate and personal financial statements and unfiled returns. She also reminded him that the Corporation had defaulted on previous agreements and that it had stopped filing returns. She asked Gessert to submit the required information by November 29, 2002, but he failed to do so. Thus, Johnson never accepted the Corporation's proposal for processing. Therefore, no installment agreement was "pending" within § 6331(k) when on December 6, 2002, the IRS issued a levy.

The Corporation also refers to its counsel's request for an installment agreement made on January 19, 2005, and IRS levies issued on January 24, 2005. However, Johnson's case history notes indicate that Johnson advised Douglas Frazer, the Corporation's lawyer, at the time of his request, that before the IRS would consider any agreement, plaintiffs had to fully satisfy their trust-fund liabilities. She also advised Frazer that to avoid an immediate enforcement action plaintiffs needed to submit a completed financial statement form by the end of the day. Frazer had failed to comply with a previous deadline of December 23, 2004, for submitting the form. At 5:15 p.m. on January 19, 2005, Frazer faxed Johnson an incomplete financial statement. Thus, Frazer repeatedly failed to comply with Johnson's requests for a completed form. Again, the Corporation fails to submit any evidence that an installment agreement was pending for purposes of § 6331(k) on January 24, 2005. Plaintiffs did not submit all the information requested by Johnson, and no proposed agreement was therefore ever accepted for processing.

### 3. § 7206

Section 7206(4) makes it a crime to conceal goods or commodities for or in respect whereof any tax is or shall be imposed, or any property upon which levy is authorized by section 6331, with intent to evade or defeat the assessment or collection of any tax imposed by this title. Plaintiffs contend that Johnson concealed a $75,000 check dropped off at the Waukesha IRS office, and thus violated § 7206. However, even assuming that Johnson concealed the check, a highly dubious assumption, plaintiffs present no evidence indicating that she did so with an intent to defeat the assessment or collection of any tax imposed by this title. No reasonable factfinder could conclude that Johnson violated § 7206.

### 4. § 7214

The Corporation contends that Johnson violated § 7214(a)(2) which imposes penalties on a revenue officer "who knowingly demands other or greater sums than are authorized by law, or receives any fee, compensation, or reward, except as by law prescribed, for the performance of any duty" by demanding money from DePuy that was not subject to a levy. However, assuming that the money in question was not subject to the levy, the Corporation provides no evidence that Johnson knew that the money was not subject to the levy, or that she demanded the money after DePuy advised her that it was not subject to the levy. The Corporation also argues that Johnson threatened legal action against a DePuy employee if he didn't send her the money, but the evidence indicates no more than that she explained to him the consequences of failing to honor a levy. Finally, the Corporation asserts that Johnson extorted Gessert and Jonynas when she told them that the IRS would enforce the Corporation's tax liabilities

against them personally and that she would refer Jonynas for interfering with collection; however, the Corporation presents no evidence indicating that Johnson did not have a basis for making these statements. Clearly, collection measures against Gessert, who was personally liable for trust-fund taxes, were appropriate. Further, there is no evidence that Johnson did not reasonably believe that Jonynas was not subject to trust fund liabilities. Based on Jonynas's position in the Corporation and Johnson's frequent contact with him, such a belief would have been reasonable. Finally, the Corporation presents no evidence that Johnson's statement that she might refer Jonynas for interference was baseless or explain how it amounts to extortion. Thus, no reasonable factfinder could conclude that Johnson violated § 7214.

### 5. Treasury Regulation 801.3

The Corporation also contends that Johnson violated Treasury Regulation 801.3(b) which provides that IRS employees will be evaluated based on whether they treat taxpayers fairly and equitably. The Corporation does not indicate how Johnson could violate this provision, which merely sets forth criteria used in employee evaluations. Further, it presents no evidence indicating that Johnson did not treat it fairly and equitably. The Corporation's argument is that Johnson's January 19, 2005 demand for completed financial statements on the same day was unfair, since it only gave the Corporation several hours to gather the necessary information, and that it was also unfair for her to fail to follow up with Gessert prior to issuing the notices of levy. However, the relevant case history notes indicate that Johnson initially advised plaintiffs that the statements were due on December 23, 2004, almost a month before the January 19, 2005 meeting, and that plaintiffs failed to comply with this deadline. Thus, plaintiffs had sufficient time to complete the statements. No reasonable factfinder could conclude that Johnson violated Treasury Regulation 801.3(b).

### D. Defendant's Counterclaims

Defendant also seeks summary judgment on its counterclaims seeking to reduce plaintiffs' unpaid tax liabilities to judgment. Defendant seeks judgment against Gessert in the amount of $390,986.27. However, the documentation it submits does not support this amount. When I add the account balance numbers from the transcripts defendant submits, I arrive at $357,368.36. Thus, I need more information and/or clarification. I direct defendant to file a brief explaining its conclusion with respect to the numbers within 21 days. If plaintiffs disagree with defendant's numbers they must respond within 21 days of receiving defendant's brief. Defendant shall have 14 days to reply if it wishes.

**Therefore,**

**IT IS ORDERED** that defendant's motion to strike is **GRANTED IN PART AND DENIED IN PART.**

**IT IS FURTHER ORDERED** that plaintiffs' motion for summary judgment is **DENIED.**

**IT IS FURTHER ORDERED** that defendant's motion for summary judgment is **GRANTED IN PART** as discussed herein.

**IT IS FURTHER ORDERED** that the parties shall file additional briefs as discussed herein.